**Richard BARR, Plaintiff,**

v.

**The DRAMATISTS GUILD, INC., Peter Stone, Ruth Goetz and Sheldon Harnick, Defendants and Third-Party Plaintiffs,**

v.

**The LEAGUE OF NEW YORK THEATRES AND PRODUCERS, INC., The Shubert Foundation, Inc., The Shubert Organization, Inc., Gerald Schoenfeld, Bernard B. Jacobs, Nederlander Organization, Inc., and James M. Nederlander, Third-Party Defendants.**

No. 82 Civ. 4876 (HFW).

United States District Court, S.D. New York.

Oct. 21, 1983.

Proskauer Rose Goetz & Mendelsohn by George G. Gallantz, Jeffrey A. Mishkin, New York City, for plaintiff.

Cahill Gordon & Reindel by Floyd Abrams, Laurence T. Sorkin, New York City, for defendants and third-party plaintiffs.

Parker Chapin Flattau & Klimpl by Barry Brett, Martin G. Bunin, Stephen G. Rinehart, New York City, for third-party defendants The Shubert Foundation, Inc., The Shubert Organization, Inc., Gerald Schoenfeld and Bernard B. Jacobs.

Weil Gotshal & Manges by Joseph W. Gelb, Harry M. Davidow, New York City, for third-party defendants Nederlander Organization, Inc. and James M. Nederlander.

## MEMORANDUM DECISION

WERKER, District Judge.

This action alleging violations of the antitrust laws was commenced by plaintiff Richard Barr, the president of The League of New York Theatres and Producers, Inc. (The League), against the Dramatist Guild, Inc. and three of its officers. The League is a trade association and multi-employer bargaining unit "whose members include producers of legitimate theatrical attractions and owners and operators of theatres in New York City" (Complaint ¶ 5). The Dramatists Guild is a not-for-profit corporation whose members include professional playwrights, composers and lyricists.

The case is presently before the court on the motion by the third party defendants and plaintiff Barr to dismiss or stay defendants' contingent counterclaim and third party complaint (collectively the counterclaim).

## I.

The complaint alleges that the defendants, The Dramatists Guild and three individual playwrights—Peter Stone, Sheldon Harnick and Ruth Goetz—who are all among its officers, have violated Section 1 of the Sherman Act by conspiring "to restrain trade and commerce in the sale of authors' works for legitimate theatrical attractions" (Complaint ¶ 6). The complaint alleges, *inter alia*, that the defendants have conspired to fix the minimum prices and other terms on which they will deal with producers and have agreed among themselves that they will not license a play to producers except upon the minimum terms incorporated in a standard form contract—the Minimum Basic Production Contract (MBPC)—promulgated by the Guild (Complaint ¶¶ 17(a), 19(b)). Plaintiff Barr seeks a declaration that the alleged conspiracy is violative of Section 1 of the Sherman Act, 15 U.S.C. § 1, and an injunction against the "use of contracts containing minimum terms and conditions for the production of any author's work as a legitimate theatrical attraction" (Complaint, p. 10). The complaint also seeks to enjoin the defendants from "involving themselves in any way, either directly or indirectly, in the negotiations between an author and a producer concerning the terms and conditions under which the right to produce any author's work will be licensed or offered for licensing for presentation as a legitimate theatrical attraction or in media other than legitimate theatrical attractions" (Complaint, p. 11). No damages are sought by Barr.

Defendants filed an answer on September 16, 1982 which denied the material allegations of the complaint. The answer asserted eight affirmative defenses. On April 28, 1983, defendants, with leave of the court, filed an amended answer containing an additional affirmative defense premised on the doctrine of *in pari delicto* (Amended Answer, Ninth Affirmative Defense) and a contingent counterclaim and third-party complaint against Barr, The League, and The Shubert and Nederlander interests.[1] The counterclaim alleges that

---

**1.** Third-party defendants The Shubert Foundation, Inc., The Shubert Organization, Inc., Gerald Schoenfeld and Bernard B. Jacobs are collectively referred to as the "Shubert interests (Amended Answer, ¶ 27); Nederlander Organization, Inc. and James M. Nederlander are col-

lectively referred to as the "Nederlander interests" (Amended Answer, ¶ 29).

The Shubert Foundation is alleged to own all the stock of The Shubert Organization, Inc. The counterclaim alleges that The Shubert Organization is a New York corporation which owns and

the counterclaim defendants have violated Section 1 of the Sherman Act by conspiring to "fix, stabilize and/or maintain at artificially low and non-competitive levels the compensation received by playwrights" (Amended Answer ¶ 45(a)), and "to enforce unfavorable terms and conditions in the contracts that are offered to playwrights" by producers (Amended Answer ¶ 45(b)). The counterclaim is denominated contingent and is asserted by defendants only if and to the extent that any alleged conduct of defendants is found to violate the antitrust laws (Amended Answer ¶ 48).

Defendants argue that "if it is held that playwrights may not lawfully combine to negotiate with producers regarding the terms and conditions of their employment, it would surely follow that producers (who do not claim to be a labor organization) would not be entitled to combine to agree on the terms and conditions on which they would deal with those same playwrights." Defendants' Memorandum of Law at 9.

The counterclaim alleges that the Shubert and Nederlander interests are producers of plays (Amended Answer ¶¶ 25, 28). It alleges that they control about 70% of the first class theaters. The Shubert and Nederlander interests are alleged to have monopoly power in the market for ownership of first class theaters in New York City (Amended Answer ¶ 37). The counterclaim plaintiffs allege that the Shubert and Nederlander interests, by reason of their monopoly power in the market for theater ownership, dominate The League and dictate the terms on which they will produce playwrights' works (Amended Answer ¶¶ 30, 39).

The defendants and counterclaim plaintiffs contend that the minimum royalty terms of the MBPC have become maximum terms, and that this is the result of concerted action by the counterclaim defendants.

They argue that the purpose and effect of the producers' negotiating the MBPC has been to impose a ceiling on the amounts producers pay playwrights.

The counterclaim alleges that the conspiracy complained of is "continuing and [is] causing and will cause irreparable injury to counterclaim plaintiffs and their business and property" (Amended Answer ¶ 47). The defendants seek injunctive relief and treble such damages as will be shown to have resulted from the conduct on which the contingent counterclaim is premised—but only in the event that the defendants' conduct is held to violate the antitrust laws.

The counterclaim defendants contend, among other things, that it is "factually untenable and legally impermissible for defendants simultaneously to (a) defend the past and continued use of their Minimum Basic Production Contract, the 'MBPC', as lawful, reasonable and necessary, and (b) argue that the same MBPC was coercively imposed on dramatists to their detriment and monetary injury." Counterclaim Defendants' Reply Memorandum of Law at 2. They state that in the event the court decides that dismissal of the counterclaim is inappropriate then the contingent counterclaim should be stayed and severed from the *Barr* suit.

## DISCUSSION.

The contingent counterclaim states a claim. It alleges a conspiracy by producers to fix the price of the services they purchase "at artificially low and non-competitive levels" (Amended Answer ¶ 45–46). The counterclaim further alleges that the producers conspired through The League to establish and fix the economic terms on which they will purchase playwrights' services (Amended Answer ¶ 43), and that the purpose of the conspiracy was

operates theaters in New York and elsewhere and engages in the production of first class theatrical attractions. It alleges that Gerald Schoenfeld is the chairman of the board of the Shubert Organization and that Bernard B. Jacobs is the president. The counterclaim alleges that the Nederlander Organization is a New Jersey corporation which owns and operates 10 first class theaters in New York City, owns and operates first class theaters in other U.S. cities as well and engages in the production of first class theatrical attractions. James M. Nederlander is alleged to be the president of the Nederlander Organization.

to reduce the compensation paid to playwrights and to remove competition among producers for the services of playwrights (Amended Answer ¶ 46). Conspiracies among buyers to suppress prices are unlawful under the antitrust laws. *Mandeville Island Farms, Inc. v. American Crystal Sugar Co.,* 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328 (1948); *Mackey v. National Football League,* 543 F.2d 606 (8th Cir.1976), *cert. dismissed,* 434 U.S. 801, 98 S.Ct. 28, 54 L.Ed.2d 59 (1977).

■ On a motion to dismiss, the well-pleaded allegations of the complaint must be taken as true and the complaint must be construed in the light most favorable to the plaintiff. In *George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.,* 554 F.2d 551, 554 (2d Cir.1977), the Court of Appeals stated:

"It has been clear in this circuit since *Nagler v. Admiral Corp.,* 248 F.2d 319 (2d Cir.1957) ... that a short plain statement of a claim for relief which gives notice to the opposing party is all that is necessary in antitrust cases, as in other cases under the Federal Rules."

■ Further, "there is no requirement that a plaintiff plead with particularity every overt act allegedly committed by a defendant in furtherance of a conspiracy or the precise role played by an alleged conspirator." *Athletes Foot of Delaware, Inc. v. Ralph Libonati Co.,* 445 F.Supp. 35, 50 (D.Del.1977). A plaintiff is not required to provide detailed allegations tending to prove its case in its complaint. *Speed Auto Sales, Inc. v. American Motors Corp.,* 477 F.Supp. 1193, 1195–96 (E.D.N.Y. 1979).

■ The counterclaim defendants also contend that the counterclaim does not properly allege antitrust injury. The counterclaim adequately alleges that the defendants (as sellers) have dealt with the counterclaim defendants (as buyers) and that the counterclaim defendants have conspired to fix the prices they have paid for playwrights' services. A plaintiff in a price-fixing case is not required to allege facts beyond these to show antitrust injury.

*Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977).

■ The counterclaim defendants argue that the counterclaim should be stricken as failing to comply with Fed.R.Civ.P. 8(a)(2) because it contains improper matter. Even assuming that some of the allegations in the counterclaim were improper, the remedy would be a motion to strike pursuant to Fed.R.Civ.P. 12(f). Dismissal of an otherwise well-pleaded complaint is too harsh a remedy. Since motions to strike are disfavored, it follows that a motion to dismiss because of "improper matter" cannot prevail. *See* 2A J. Moore, *Federal Practice,* ¶ 12.21[2], at 2429 (2d ed. 1982).

■ The defendants' labor exemption defense also is challenged. The counterclaim adequately alleges that the Dramatist Guild is a labor organization (Amended Answer, Sixth Affirmative Defense) and that the MBPC was the result of collective bargaining between The Dramatist Guild and The League (Amended Answer, ¶¶ 40, 42). Whether a particular group of individuals is entitled to claim the labor exemption from the antitrust laws cannot be decided on a motion to dismiss. *Bernstein v. Universal Pictures, Inc.,* 517 F.2d 976 (2d Cir. 1975); *Home Box Office, Inc. v. Directors Guild of America, Inc.,* 531 F.Supp. 578 (S.D.N.Y.1982), *aff'd per curiam,* 708 F.2d 95 (2d Cir.1983). In addition, a ruling by the court on the applicability of the *per se* rule to the conduct at issue here also would not be appropriate since there is no factual record upon which the ruling can be made.

The counterclaim defendants contend that "the Guild and its officers cannot simultaneously seek to uphold the legality of the MBPC and plead that Barr, who is seeking to enjoin its use, and the third party defendants are unlawfully injuring defendants by imposing the same MBPC on them" (Counterclaim Defendants' Memorandum at 15). This argument is without merit. The Federal Rules of Civil Procedure expressly permit "alternativ[e] or hypothetica[l]" pleading and also the assertion of "separate claims ... regardless of

consistency." Fed.R.Civ.P. 8(e)(2) provides in relevant part:

"A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or separate counts or defenses.... A party may also state as many separate claims as he has regardless of consistency....

Rule 8(a) defines the term "claim" to embrace counterclaims and provides, in addition, that "relief" in the alternative or of several different kinds may be demanded."

 It is clear that defenses and a counterclaim need not be consistent with each other. *See* 2A J. Moore, *Federal Practice,* ¶ 8.31[2], at 8–288 (2d ed. 1982); 5 C. Wright and A. Miller, *Federal Practice and Procedure,* § 1282 at 370 (1969); *Charles Rubenstein, Inc. v. Columbia Pictures Corp.,* 14 F.R.D. 401, 402 (D.Minn. 1953). Under Rule 8(e), "[a] pleading may present alternative statements of the facts, or alternative legal theories." 2A J. Moore, *Federal Practice,* ¶ 8.31[2] at 8–286 (2d ed. 1982). In this case, the defendants have denied that they engaged in any illegal conduct under the antitrust laws, but have alleged hypothetically that if they engaged in any illegal conduct then similar conduct of the counterclaim defendants is unlawful as well. The counterclaim is properly framed as a hypothetical pleading.

 The counterclaim defendants invoke the doctrine of judicial estoppel as an additional bar to the counterclaim. Judicial estoppel is a "doctrine of rather vague outline" that "is limited to change of position in judicial proceedings." 1B J. Moore, *Federal Practice,* ¶ 0.405[8], at 239 (2d ed. 1982). Judicial estoppel is not applicable because pleadings framed in an alternative or hypothetical manner do not involve a change of position. The contingent counterclaim does not involve a change of position by the defendants.

The counterclaim defendants have moved to stay or dismiss the contingent counterclaim contending that adjudication of the counterclaim together with the main action would be uneconomical and impose needless burden and expense on the parties. They argue that trial of the main action together with the counterclaim would burden the *Barr* action with the adjudication of many additional, complex and irrelevant issues.

The original claim asserted by Mr. Barr challenges the lawfulness of the MBPC under the antitrust laws. Defendants contend that the MBPC is lawful and have set forth a number of affirmative defenses which the counterclaim defendants have not moved to strike and which will have to be tried by the court in any adjudication of the original claim. The Fifth Affirmative Defense alleges that the negotiation of the MBPC in 1955 and 1961 "and the related contract practices of the Dramatists Guild are reasonable and have facilitated the presentation of first class productions" (Amended Answer ¶ 14). The Eighth Affirmative Defense alleges that acts complained of by Mr. Barr:

"are reasonable, have redeeming virtue, and do not unreasonably restrain trade and commerce, in light of the economic realities and unique conditions which characterize the business of presenting legitimate theatrical attractions—including, *inter alia,* (i) monopolistic ownership of theaters, (ii) vertical integration of theater ownership and production of legitimate theatrical attractions, (iii) the dominant position of the theater-owner producers in The League, (iv) the absence of coercion by defendants, and (v) collective bargaining between The League and organizations representing actors, directors, scenic designers, musicians, writers and other individuals who provide personal services for the first-class production of a play." (Eighth Affirmative Defense).

 Defendants' Ninth Affirmative Defense of *in pari delicto* asserts that "[p]laintiff and the other producers in The League have conspired to use their vastly superior bargaining power to establish the terms of the MBPC and to compel the adherence of playwrights to those terms."

There is an overlap between the issues raised by the defendants' counterclaim and their *in pari delicto* defense.

A stay or severance would be inappropriate because the discovery necessary for both the main claim (including defenses to it) and the counterclaim appears to be basically the same. As noted by the defendants, trial of both the main claim and the counterclaim will involve similar proof—including the negotiations leading to the adoption of the MBPC, the role of the The League and the Shubert and Nederlander interests in its adoption, the comparative bargaining power of the parties, and the effect of the MBPC.

Further, both the original claim and the counterclaim involve nearly identical legal issues. In one case, the issue is the legality of concerted action taken by sellers (the dramatists) with regard to the terms of their employment by buyers (producers). In the other case, the issue is the legality of concerted action by buyers with respect to the same sellers in the same transaction. A severance would not result in judicial economy.

■ A motion to sever and stay under Fed.R.Civ.P. 42(b) is addressed to the discretion of the court, *In re Master Key Antitrust Litigation,* 528 F.2d 5, 14 (2d Cir.1975), and must be denied unless it appears that separate trials are necessary "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy ...." Fed.R.Civ.P. 42(b). The party moving for a separate trial has the burden of showing that it will be prejudiced if a separate trial is not granted. 5 J. Moore, *Federal Practice,* ¶ 42.03[1], at 42–40 (2d ed. 1982). No such showing has been made in this case.

In *Reading Industries, Inc. v. Kennecott Copper Corp.,* 61 F.R.D. 662, 664 (S.D. N.Y.1974), the court indicated that in applying Rule 42(b) the following factors should be considered:

"(1) are the issues sought to be tried significantly different from one another? (2) are the issues triable by jury or the court? (3) does the posture of discovery as to the respective issues suggest that they should or should not be tried together? (4) will the separate issues require the testimony of different witnesses and documentary proof? (5) will the party opposing the severance be prejudiced if it is granted?"

In this case, the issues on the original claim are not significantly different than those to be tried on the counterclaim: both involve the same parties, the same negotiations, and even the same document—the MBPC. Both raise essentially the same legal issue.

At this point in the case, none of the counterclaim defendants has requested a trial by jury, and all of the claims can be tried by the court. The discovery required to establish defendants' defenses would be the same discovery necessary to prove liability on the counterclaim.

No prejudice to the counterclaim defendants would result if severance is denied. However, the counterclaim plaintiffs would be prejudiced if they have to undertake duplicative discovery and successive trials on the *Barr* claim and the counterclaim.

■ Finally, the counterclaim defendants contend that the Dramatist Guild does not have standing to sue under the antitrust laws. The contingent counterclaim asserts claims for injunctive relief and damages on behalf of four plaintiffs. The three individual playwrights have standing to sue for damages and injunctive relief, and the counterclaim defendants do not argue otherwise. The Dramatists Guild is an organization composed of playwrights who write for the first class theater and who represent the common interests of playwrights. The defendants note that while an association may not sue for treble damages under Section 4 of the Clayton Act, 15 U.S.C. § 15, where the only injury alleged is to its members, *Hawaii v. Standard Oil Co.,* 405 U.S. 251, 262–65, 92 S.Ct. 885, 891–92, 31 L.Ed.2d 184 (1972); *Nassau County Ass'n of Insurance Agents v. Aetna Life & Casualty Co.,* 497 F.2d 1151, 1153–54 (2d Cir.), *cert. denied,* 419 U.S.

968, 95 S.Ct. 232, 42 L.Ed.2d 184 (1974), associations have been allowed to sue for injunctive relief on behalf of their membership under Section 16 of the Clayton Act, 15 U.S.C. § 26. The reason for this is because of the differences between Section 4 actions and Section 16 actions.

Section 16 provides in part:

"Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief ... against threatened loss or damage by a violation of the antitrust laws...." 15 U.S.C. § 26.

In *Associated General Contractors v. Otter Tail Power Co.*, 611 F.2d 684, 689 (8th Cir.1979), the Eighth Circuit noted that "[t]wo important justifications for limiting standing under § 4 are the difficulties inherent in determining the damages of indirectly harmed plaintiffs and the possibility of duplicative and ruinous recoveries." However, the court stated that in a suit under Section 16 precise knowledge of the degree of the threatened injury to each plaintiff is not required. For this reason the standing requirements under Section 16 are more lenient than those under Section 4. *Id. See also Mid-West Paper Products Co. v. Continental Group, Inc.*, 596 F.2d 573, 581–82 (3d Cir.1979).

In *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975), the Supreme Court held that an association may bring an action on behalf of its members for injunctive relief even where no injury to the association is alleged:

"Even in the absence of injury to itself, an association may have standing solely as the representative of its members.... The possibility of such representational standing, however, does not eliminate or attenuate the constitutional requirement of a case or controversy.... The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit.... So long as this can be established, and so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction." (citations omitted).

*Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 342–43, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977), affirmed the test articulated in *Warth* for associational standing. In support of their contention that the Dramatists Guild lacks antitrust standing, the counterclaim defendants rely on *Nassau County Ass'n of Insurance Agents, Inc. v. Aetna Life & Casualty Co.*, 497 F.2d 1151 (2d Cir.), *cert. denied*, 419 U.S. 968, 95 S.Ct. 232, 42 L.Ed.2d 184 (1974) and *NAACP v. New York Clearing House Ass'n*, 431 F.Supp. 405 (S.D.N.Y.1977). Both cases were decided before the Supreme Court's decision in *Hunt*. As the Eighth Circuit noted in *Associated General Contractors*, *Nassau County* was not only decided before *Hunt* but before *Warth* and is therefore "of little assistance" on the question of associational standing and *NAACP* is not persuasive authority because it relies heavily on *Nassau County*. 611 F.2d at 690 n. 6.

Courts which have considered the associational standing issue under Section 16 of the Clayton Act since *Hunt* have applied the *Hunt* test. *See, e.g., Associated General Contractors v. Otter Tail Power Co.*, 611 F.2d at 687–91; *Health Care Equalization Committee of the Iowa Chiropractic Society v. Iowa Medical Society*, 501 F.Supp. 970, 979–80 (S.D.Iowa 1980).

Under *Hunt*, an association has standing to seek injunctive relief if:

"(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. 432 U.S. at 343, 97 S.Ct. at 2441.

The Dramatists Guild satisfies the three elements of the *Hunt* test. The purpose of the Dramatist Guild is to protect and promote the professional interests of playwrights and to improve the conditions under which their works are created and produced. While individual members could sue in their own right, neither the claim asserted nor the relief requested by the Guild requires their participation in this action.

In the Second Circuit there is "no persuasive authority that ... [indicates] associational standing is precluded in the antitrust context." *National Constructors Ass'n v. National Electrical Contractors Ass'n,* 498 F.Supp. 510, 520 (D.Md.1980), *aff'd in relevant part,* 678 F.2d 492 (4th Cir.1982). Every other circuit that has considered the issue since *Hunt* has held that associational standing is proper under Section 16. The Dramatists Guild is entitled to represent its members on its claim for injunctive relief.

For the foregoing reasons, the motion by the counterclaim defendants to dismiss or stay the contingent counterclaim and third party complaint is denied.

SO ORDERED.