**ASHLEY MEADOWS FARM, INC. and Dolores A. Swann, Plaintiffs,**

v.

**AMERICAN HORSE SHOWS ASSOCIATION, INC., Defendant.**

**No. 82 Civ. 5691 (RWS).**

United States District Court, S.D. New York.

Sept. 20, 1984.

As Amended Oct. 24, 1984.

Butler, Fitzgerald & Potter, New York City, for plaintiffs; Thomas A. Butler, James M. Davis, New York City, of counsel.

LeBoeuf, Lamb, Leiby & MacRae, for defendant; H. Richard Wachtel, Molly Boast, New York City, of counsel.

## OPINION

SWEET, District Judge.

Plaintiffs Ashley Meadows Farm, Inc. ("Ashley") and Ashley's president, Dolores Swann ("Swann") sponsor and operate horse shows in Chester County, Pennsylvania. They seek treble damages for alleged violations of the Sherman Act, 15 U.S.C. §§ 1 and 2, by defendant American Horse Shows Association, Inc. ("AHSA"). AHSA has moved for summary judgment pursuant to Fed.R.Civ.P. 56 with respect to each plaintiff. The motion is granted with respect to Swann but is denied with respect to Ashley.

### Background

The complaint and affidavits allege that AHSA is a nationwide organization which establishes rules, guidelines, and procedures for horse showing and which also recognizes and designates certain shows each year to be held under its rules. Although AHSA selects horse shows which are to be accorded various competitive levels, AHSA does not itself operate horse shows.

Swann is president of Ashley, and her involvement as a participant in the horse show industry derives solely from her employment by Ashley, which sponsors and operates horse shows. Swann does not compete with other horse shows in the horse show industry and she does not claim injury as an exhibitor, nor does she own stock in Ashley.

The first claim in the complaint alleges that AHSA has created a horizontal market division among recognized shows that has had the effect of barring the entry of new horse shows into competition with established horse shows. The market division is allegedly a consequence of an AHSA rule controlling the scheduling and distribution of shows around the country that establishes suggested minimum distances between shows of comparable rank given on the same date. Shows in AHSA's "A" category, the category where horses can accumulate the greatest number of points towards annual awards and where the dollar prize rewards are highest, should be 250 miles apart; "B" shows should be 150 miles apart. The rule also provides that a show recognized on a certain date in a particular year may obtain a comparable date in subsequent years. Plaintiffs allege that this scheduling rule, in violation of section 1 of the Sherman Act, amounts to a market division that has prevented new shows, and Ashley in particular, from entering the market.

The second claim alleges a conspiracy among certain recognized shows and the directors of those shows to apply AHSA rules in a manner intended to protect established shows from the competition threatened by new market entrants.

The third claim alleges a second conspiracy to reduce the number of recognized shows in the Middle and Northeast so that shows in other regions will obtain a competitive advantage. This conspiracy is also allegedly intended to insulate existing shows from competition and to reduce the chances of plaintiffs' obtaining recognition for "A" shows, all in violation of the Sherman Act.

The fourth claim alleges that certain already recognized shows and directors of those shows have engaged in a series of

acts designed to interfere with and eliminate Ashley's and Swann's participation in horse showing. These acts allegedly include encouraging AHSA members to bring frivolous claims against Ashley and selectively enforcing AHSA rules against Ashley. The consequence of this capricious, arbitrary, and harassing enforcement of AHSA rules has allegedly been the improper imposition of fines on both Ashley and Swann, in her capacity as President of Ashley. Further, the wrongful enforcement of AHSA rules has allegedly damaged the reputations of both Ashley and Swann.

Swann has claimed the following personal injuries as a consequence of the facts alleged in the four claims:

a) Ashley's failure to pay Swann any salary, as a result of Ashley's diminished profits;

b) expenses incurred in defending against charges brought by defendant;

c) fines imposed by defendant upon Swann in her capacity as President of Ashley; and

d) damage to her reputation as a consequence of the various claims by defendant.

Ashley alleges that it has suffered actual economic damages as a consequence of the violations by defendant. These damages have taken the form primarily of reduced revenues from the sponsorship of horse shows, and plaintiff asserts that it will demonstrate the extent of such damages by relying upon the financial records of Ashley and the profit statements of "A" shows held on the more desirable dates, among other documents. Ashley also asserts damages in the form of fines imposed by defendant in its frivolous rule enforcement actions and in the form of expenses incurred in defending against such charges.

**Discussion**

In a prior motion, AHSA unsuccessfully sought to dismiss the case for failure to state a claim upon which relief could be granted. See this court's opinion of September 28, 1983. Defendant has now moved for summary judgment against each plaintiff, claiming that Swann has not alleged any personal injury that is compensable under the antitrust laws and that Ashley has established no facts that would provide a foundation for a determination of damages.

Antitrust doctrine supports defendant's position that none of the damages alleged by Swann, even if proven, is considered to be an "antitrust injury" protectable by the Sherman and Clayton Acts. The class of persons who may maintain a private damage action under the antitrust laws is defined in § 4 of the Clayton Act, 15 U.S.C. § 15, which states in part:

Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States ....

Despite the expansive language of the statute, a restrictive interpretation of the scope of compensable antitrust injuries has been defined by the Supreme Court. In *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983), the Court concluded that an analysis must begin with an examination of "the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them." 459 U.S. at 535, 103 S.Ct. at 907. "An antitrust violation may be expected to cause ripples of harm to flow through the Nation's economy ... It is reasonable to assume that Congress did not intend to allow every person tangentially affected by an antitrust violation to maintain an action to recover threefold damages for the injury to his business." *Id., quoting Blue Shield of Virginia, Inc. v. McCready*, 457 U.S. 465, 476–77, 102 S.Ct. 2540, 2547, 73 L.Ed.2d 149 (1982).

The Court in *Associated General Contractors* defined those factors which are controlling in this analysis: the nature of the plaintiff's alleged injury, the directness or indirectness of the injury with respect to the alleged antitrust violation, the exist-

ence of a more direct victim of the alleged antitrust violation to vindicate the public interest in antitrust enforcement, the speculative character of the damages alleged, and the possibility of duplicative recoveries.

In *Associated General Contractors* the Court stressed that the essential consideration in analyzing the "nature" of the plaintiff's injury was whether the plaintiff was either a consumer or competitor in the relevant market. 459 U.S. at 538, 103 S.Ct. at 908. The failure of the plaintiff in that case to fall into either of those categories precluded the action from being pursued. In this action, the personal damages Swann alleges and has testified to do not derive from her status as either a competitor or a consumer. The "consumers" of horse shows are those exhibitors who seek to win prizes and honors at the shows. Swann expressly denied seeking damages based upon her status as an exhibitor. Similarly, Swann is not individually a competitor within the market for sponsorship of horse shows. Her involvement in that status is exclusively derivative of her employment by Ashley. Ashley as a corporate entity may be such a competitor, although Swann individually is not. Swann is consequently neither a consumer nor a competitor in the relevant market.

The Court in explaining the considerations behind the second factor to be weighed—the directness or indirectness of the injury and the existence of a more direct victim to prosecute the case—cited approvingly to a series of cases that deny employees with merely derivative claims the right to bring actions. 459 U.S. at 541 n. 46, 103 S.Ct. at 910 n. 46. In *Pitchford v. Pepi, Inc.*, 531 F.2d 92 (3d Cir.), *cert. denied*, 426 U.S. 935, 96 S.Ct. 2649, 49 L.Ed.2d 387 (1976) the court found that the president of a corporation which was the target of antitrust violations did not himself have the right to sue for the reduced salary that he received as a result of the alleged antitrust conspiracy. "[A]ny reduction in his salary attributable to [defendant's] practices is too far removed along the causal chain to entitle Mr. Pitchford to standing." *Id.* at 97. Similarly, in

*Reibert v. Atlantic Richfield Co.*, 471 F.2d 727 (10th Cir.), *cert. denied*, 411 U.S. 938, 93 S.Ct. 1900, 36 L.Ed.2d 399 (1973) the court denied standing to an employee allegedly dismissed as a consequence of a merger violative of the antitrust laws. The court stated that "If there is any antitrust violation, it is directed toward the petroleum industry. Appellant is not among those (the buyers and sellers constituting the market) engaged in the sort of legitimate activities which the prohibition of this type of violation was clearly intended to protect." *Id.* at 731. *See also In Re Industrial Gas Antitrust Litigation*, 681 F.2d 514, 520 (7th Cir.), *cert. denied*, 460 U.S. 1016, 103 S.Ct. 1261, 75 L.Ed.2d 487 (1983) ("Thus, as a general rule, stockholders, employees, and creditors of an injured company ... have all been denied recovery because their injuries were too 'indirect,' 'secondary' or 'remote' "); *Long Island Lighting Co. v. Standard Oil Co. of California*, 521 F.2d 1269 (2d Cir.1975); *N.A.A.C.P. v. New York Clearing House Ass'n*, 431 F.Supp. 405 (S.D.N.Y.1977).

▪ Swann's allegations of lost salary, expenses incurred in defending against AHSA enforcement actions, and fines imposed upon her as president of Ashley in such enforcement actions are the kind of derivative injuries that the Supreme Court stated do not rise to the level of "antitrust injuries" compensable under the statute. *Associated General Contractors*, 459 U.S. at 541 n. 46, 103 S.Ct. at 910 n. 46. It is true that a line of cases has recognized employee standing to maintain antitrust actions. *See Radovich v. National Football League*, 352 U.S. 445, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957); *Nicholas v. Spencer International Press, Inc.*, 371 F.2d 332 (7th Cir.1967); *Province v. Cleveland Press Pub. Co.*, 571 F.Supp. 855 (N.D.Ohio 1983). In *Province*, however, the Court explained that "[u]nlike *Reibert* and similar cases, where the corporate employer was the target of the monopolization effect and the employee a derivative victim, here the employer, the Press, is alleged to be no victim but rather a party to the conspiracy,

and the employees, like Radovich, the targets." *Id.* at 867. The conspiracies alleged in *Radovich, Nicholas,* and *Province* were intended to restrict the labor market, and the direct victims were therefore the employees who brought the action. *See In Re Industrial Gas Antitrust Litigation, supra,* at 517. None of the *Radovich* like cases maintains that *both* an employer and an employee may maintain an antitrust action for injuries arising from the same antitrust violation. Swann's claims fall into the "derivative victim" category controlled by *Associated General Contractors.* Although plaintiffs attempt to distinguish the reputational harm allegedly suffered by Swann, this too is merely derivative of Swann's employment relationship with Ashley. Moreover, plaintiffs do not demonstrate support for their position that reputational harm will alone support an antitrust claim.

The damages alleged by Swann thus fail to survive the analysis mandated by the first two criteria established by the Court in *Associated General Contractors.* The remaining factors—the speculative nature of the damages and the possibility of duplicative recoveries—also suggest that Swann's action is inappropriate. Determining whether and to what extent Swann would have received compensation from a closely held corporation had that corporation been profitable would be highly speculative. Similarly, the relationship between Swann and Ashley suggests the likelihood of duplicative recoveries.

■ Plaintiffs also seek injunctive relief against AHSA, and plaintiffs argue that the lower standard established for standing to seek an injunction under the antitrust laws is satisfied by Swann. This effort is not successful. Although the standing requirements for injunctive relief, 15 U.S.C. § 26 (Section 16 of the Clayton Act) may be less stringent than those for treble damages, the necessary showing is still greater than that accomplished by Swann. In *Barr v. Dramatists Guild, Inc.,* 573 F.Supp. 555 (S.D.N.Y.1983), the court stated that "in a suit under Section 16 precise knowledge of the degree of the threatened injury to each plaintiff is not required. For this reason the standing requirements under Section 16 are more lenient than those under Section 4." *Id.* at 562. Although the concern with quantifying alleged damages or with duplicative recoveries may not exist when injunctive relief is sought, it is still a necessary prerequisite to standing under section 16 that *some* antitrust injury be alleged. The conclusion of the preceding analysis was that Swann alleges *no* damage compensable under the antitrust statutes. The rationale for more expansive section 16 standing therefore does not stretch as far as Swann desires, and she cannot maintain an action under section 16 on the facts alleged.

■ Finally, Swann asserts that the "assignment" of Ashley's claim to Swann makes her a real party in interest. Even if the assignment is a valid transfer of Ashley's claims, the assignment would not make Swann a plaintiff in her own right or confer standing upon her other than to assert Ashley's claims. She may direct the lawsuit on behalf of Ashley, but she may not thereby gain standing to prosecute her personal claims against AHSA.

As a matter of law, based upon undisputed facts, Swann has failed to allege a claim upon which antitrust recovery may be based. Because she is neither a consumer nor a competitor, and because her damages are derivative of those of Ashley itself, Swann does not bring her action within the ambit of the antitrust laws. Defendant's motion for summary judgment with respect to Swann is therefore granted.

AHSA has also moved for summary judgment against Ashley. Initially this motion was based upon a rule 37(b) motion which sought to preclude Ashley's presentation of certain evidence with respect to damages. Progressing from the assumption of such a ban, AHSA argued that Ashley's consequent inability to prove damages justified granting summary judgment in Ashley's favor. Ashley has subsequently turned over the financial documents that were the subject of the 37(b) motion, and

AHSA has therefore withdrawn that motion. AHSA, however, maintains its summary judgment motion, arguing that the facts alleged heretofore by AHSA fail to establish determinable, compensable damages.

██ It simply cannot be said at this stage of the proceedings that there is no dispute about the facts regarding legitimate antitrust damages suffered by Ashley or that on the basis of undisputed facts the existence of damages has been "conclusively disproved." *See Norfolk Monument v. Woodlawn,* 394 U.S. 700, 89 S.Ct. 1391, 22 L.Ed.2d 658 (1969). This Circuit has held that "[s]ummary judgment for the defendants can be sustained ... but only if the reviewing court is satisfied that a properly instructed jury, giving full weight to plaintiff's evidence, drawing every reasonable inference in its favor, and subjecting defendants' evidence to a critical eye, could not rationally have found that plaintiff was entitled to any relief." *Ambook Enterprises v. Time, Inc.,* 612 F.2d 604, 611 (2d Cir.1979), *cert. dism.,* 448 U.S. 914, 101 S.Ct. 35, 65 L.Ed.2d 1179 (1980). Given the availability to Ashley of its own financial statements and its asserted intention to introduce evidence of the profitability of horse shows of the category and scale which Ashley had desired to sponsor, the rigorous showing necessary to grant a summary judgment motion has not been satisfied.

### Conclusion

The motion to dismiss Swann as a plaintiff is granted. The motion for summary judgment against Ashley is denied.

**IT IS SO ORDERED.**