**MORSE/DIESEL, INC., Plaintiff and Counterclaim Defendant,**

v.

**FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Defendant, Third–Party Plaintiff and Counterclaimant,**

v.

**T. FREDERICK JACKSON, INC., Third–Party Defendant,**

and

**Times Square Hotel Company and Marriott Corporation, Additional Defendants on Counterclaims.**

**No. 86 Civ. 1494 (PKL).**

United States District Court, S.D. New York.

May 3, 1991.

Friedman, Wang & Bleiberg, P.C., New York City (Peter N. Wang, Lisa S. Eggert, of counsel), for Morse/Diesel, Inc., Times Square Hotel Co., and Marriott Corp.

Wolf, Block, Schorr and Solis–Cohen, Philadelphia, Pa. (Ian A.L. Strogatz, Gary L. Leshko, Debra K. Wolf, Esq., of counsel), and Hart & Hume, New York City, for Fidelity and Deposit Co. of Maryland.

## ORDER AND OPINION

LEISURE, District Judge.

This diversity action is brought by plaintiff for damages resulting from an alleged overpayment to its subcontractor in connection with the Marriott Marquis Hotel project. Plaintiff Morse/Diesel, Inc. ("Morse/Diesel"), alleges, in addition to its breach of contract claim, fraud and breach of the covenant of good faith and fair dealing. Defendant Fidelity and Deposit Company of Maryland ("F & D") has asserted counterclaims of fraud and bad faith breach against plaintiff and additional counterclaim defendants, Times Square Hotel Company ("Times Square") and Marriott Corporation ("Marriott"). Morse/Diesel, Times Square and Marriott (collectively, the "counterclaim defendants") now move the Court to: (1) dismiss defendants' counterclaims pursuant to Fed.R.Civ.P. 12(b)(6), 8(a) and 9(b); (2) strike F & D's ninth affirmative defense pursuant to Fed. R.Civ.P. 12(f); and (3) impose sanctions upon F & D pursuant to Fed.R.Civ.P. 11. F & D opposes these motions and has cross-moved for bifurcation of plaintiff's claims, pursuant to Fed.R.Civ.P. 42(b), and for a stay of discovery proceedings.

## BACKGROUND

This dispute concerns events surrounding the construction of the Marriott Marquis Hotel (the "Project" or the "Hotel") in midtown Manhattan. The Project was owned by Times Square, a joint venture composed of Marriott and John Portman, the Project's architect. Morse/Diesel was the general contractor for the Project. Under a subcontract executed in 1982, T. Frederick Jackson, Inc. ("Jackson") agreed to install a complete electrical system for the Project. F & D issued a performance bond (the "Bond") on behalf of Jackson, in which the counterclaim defendants, among others, were named as obligees. The Bond gave F & D three options for fulfilling its obligations in the event Jackson was, and was declared to be, in default on the subcontract: F & D could remedy the default, complete the subcontract, or arrange for another subcontractor to complete the work.

In mid–1985, a dispute arose as to whether Jackson's cost of completion would overrun the amount provided in the subcontract. On August 6, 1985, a meeting was held at F & D's Baltimore office, at which Jackson allegedly stated that its cost of completing the electrical system would be less than the balance left in the subcontract. Morse/Diesel alleges, and F & D denies, that F & D joined in Jackson's representation.

Morse/Diesel alleges that, despite its own estimate and belief that Jackson's cost would exceed the subcontract balance, it decided to rely on F & D's representation that Jackson would not exceed that balance, on the ground that F & D allegedly had superior resources to estimate the costs of the Project. *See* Memorandum of Law in Support of Morse/Diesel, Inc., Marriott Corp. and Times Square Hotel Co.'s Motion to Dismiss Counterclaims and for Sanctions (hereinafter "Morse/Diesel Mem.") at 11–12.

On August 8, 1985, Morse/Diesel and F & D entered into a one-page reimbursement agreement (the "Reimbursement Agreement"), under which Morse/Diesel agreed to fund Jackson for the work required to complete the subcontract. F & D agreed to reimburse Morse/Diesel for any advance payments made to Jackson that exceeded the adjusted balance of Jackson's subcontract "as ultimately determined (by litigation or arbitration or settlement, as the case may be), plus interest at the legal rate of New York State from the date of each such payment." Reimbursement Agreement, Morse/Diesel Mem., Exhibit D.

F & D contends that, as of February 1986, there had been no ultimate determination that any payments made to or for the benefit of Jackson exceeded the adjusted subcontract balance, and that Jackson was still at work on the Project. Counterclaim ¶ 30. F & D allegedly was awaiting documentation from Morse/Diesel in support of its claims of overpayment. Nevertheless, in mid-February 1986, Morse/Diesel instituted this action against F & D seeking reimbursement for the purported overpayment to Jackson. After F & D joined Jackson as third-party defendant, Jackson asserted a claim against Morse/Diesel alleging that it was owed an additional $11,000,000 for its work on the Project.

After Morse/Diesel amended its complaint to add claims against F & D for fraud and for breach of the implied covenant of good faith and fair dealing,[1] F & D filed an answer containing the counterclaims that are the subject of the instant motions. F & D alleges that the counterclaim defendants falsely represented that they believed that Jackson's cost to complete its work would exceed the remaining adjusted subcontract balance, and that this misrepresentation fraudulently induced F & D to enter into the Reimbursement Agreement. Counterclaim ¶¶ 33, 34. F & D also asserts that this alleged misrepresentation violated the covenant of good faith and fair dealing implied in the Bond and deprived F & D of its rights under the Bond by inducing F & D to assume an additional obligation. Counterclaim ¶¶ 42, 43, 44.

The counterclaim defendants have now moved to dismiss F & D's fraud counterclaim on a number of grounds, including failure to allege essential elements of fraud including falsity, reliance, and damages; admission by F & D in its answer that the alleged misrepresentation was true; and failure to allege specific acts by Marriott or Times Square. The counterclaim defendants move to dismiss F & D's claim of breach of the Bond covenant of good faith

on the ground that none of the counterclaim defendants are signatories to the Bond. Plaintiff also asks the Court to strike F & D's ninth affirmative defense, which is grounded in the same alleged misrepresentation. Finally, counterclaim defendants ask the Court to impose sanctions upon F & D for filing unfounded counterclaims.

In a separate motion, F & D moves the Court to bifurcate the trial of the issues arising from the contract dispute between Morse/Diesel and Jackson from that of the claims of bad faith breach and fraud arising from the subsequent Reimbursement Agreement between Morse/Diesel and F & D. F & D also seeks a stay of discovery relating to the fraud and bad faith breach claims.

## DISCUSSION

### I. Morse/Diesel's Motions to Dismiss

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) must be denied "unless it appears beyond a doubt that the [counterclaim] plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *see also Rauch v. RCA Corp.,* 861 F.2d 29, 30 (2d Cir.1988). The Court must accept F & D's allegations of facts as true, together with such reasonable inferences as may be drawn in its favor. *See Scheuer, supra,* 416 U.S. at 236, 94 S.Ct. at 16; *Murray v. Milford,* 380 F.2d 468, 470 (2d Cir.1967). Fed.R.Civ.P. 8(a) requires only a " 'short and plain statement of the claim' that will give the defendant fair notice of what plaintiff's claim is and the ground upon which it rests." *Conley, supra,* 355 U.S. at 47, 78 S.Ct. at 103 (*quoting* Fed.R.Civ.P. 8(a)(2)); *see also Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). The

---

1. *See Morse/Diesel, Inc. v. Fidelity & Deposit Co.,* 715 F.Supp. 578 (S.D.N.Y.1989) (granting motion to amend); *Morse/Diesel, Inc. v. Fidelity & Deposit Co.,* No. 86 Civ. 1494, 1990 WL 52266 (S.D.N.Y. Apr. 17, 1990) (denying motion to dismiss amended complaint).

Court must analyze F & D's counterclaims under this standard.

### A. Fraud Counterclaim

The elements of fraudulent misrepresentation under New York law are: a false representation, scienter, materiality, expectation of reliance, justifiable reliance and damage. *See, e.g., Morse/Diesel, Inc. v. Fidelity & Deposit Co.*, 715 F.Supp. 578, 585 (S.D.N.Y. 1989). F & D's fraud counterclaim turns on the sincerity of Morse/Diesel's August 1985 representation of its belief that the cost of completion of the Hotel would exceed the remaining adjusted subcontract balance.[2] F & D claims that this representation was false and known by counterclaim defendants to be false, and, furthermore, was intended to induce F & D to enter the Reimbursement Agreement, thereby increasing F & D's obligations beyond those that existed under the Bond. Counterclaim ¶¶ 32, 34, 38.

■ Among the various grounds on which the counterclaim defendants base their motion to dismiss F & D's fraud counterclaim is a single dispositive issue. As the counterclaim defendants point out, F & D admitted in its answer to plaintiff's claim of fraud that plaintiff believed that there would be a cost overrun. Paragraph 30 of F & D's answer to the amended complaint reads: "It is admitted that Morse/Diesel believed, as it so stated at the August 6, 1985 meeting, that Jackson's cost to complete its Subcontract would exceed the Subcontract price," and "it is further specifically denied that Morse/Diesel relied upon anything other than Morse/Diesel's own stated position, opinion and belief that

Jackson's cost to complete its Subcontract would exceed the Subcontract price." Answer ¶ 30.[3]

It is axiomatic that "[a] party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." *Bellefonte re Insurance Co. v. Argonaut Insurance Co.*, 757 F.2d 523, 528 (2d Cir.1985) (citing *White v. Arco/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir.1983)); *see also R. Dakin & Co. v. Charles Offset Co.*, 441 F.Supp. 434, 439 (S.D.N.Y.1977). " 'Under federal law, ... admissions in the pleadings are generally binding on the parties and the Court.' 'Having agreed on a set of facts, the parties ... and this Court, must be bound by them; we are not free to pick and choose at will.' " *PPX Enterprises, Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 123 (2d Cir.1984) (quoting *Brown v. Tennessee Gas Pipeline Co.*, 623 F.2d 450, 454 (6th Cir.1980) and *Stanley Works v. FTC*, 469 F.2d 498, 506 (2d Cir.), *cert. denied*, 412 U.S. 928, 93 S.Ct. 2750, 37 L.Ed.2d 155 (1973)).

There is an obvious discrepancy between F & D's answer and counterclaim, which F & D characterizes as "alternative pleading." Memorandum of Law of Fidelity & Deposit Company of Maryland in Opposition to Motion of Morse/Diesel, Inc., Marriott Corp. and Times Square Hotel Company to Dismiss Counterclaims and for Sanctions (hereinafter "F & D Mem.") at 18 n. 10. While the Federal Rules of Civil Procedure permit a party to "set forth two or more statements of a claim or defense alternatively or hypothetically, ... subject to the obligations set forth in Rule 11," Fed.

---

**2.** F & D's counterclaim asserts that

in the event of any determination that Morse/Diesel relied upon any ... representation by F & D [that there would be no cost overrun], then Morse/Diesel and the other counterclaim defendants fraudulently induced F & D into entering into the Reimbursement Agreement by misrepresenting at the time that it was their position, opinion and belief that Jackson's cost to complete its work would exceed the adjusted Subcontract balance.

Counterclaim ¶ 33.

**3.** While the counterclaim refers to the counterclaim defendants' collective belief, and the ad-

mission in the answer refers only to plaintiff's belief, the connection of Times Square and Marriott to the representation of belief at the August 6 meeting is slender at best. F & D relies primarily on its allegation of conspiracy among all three counterclaim defendants, and "adoption" by Marriott and Times Square of Morse/Diesel's statements. *See* F & D Mem. at 37–38, 40. While F & D is correct that the acts of one co-conspirator may be attributed to its co-conspirators, the allegations against Marriott and Times Square cannot outlive the Court's dismissal of the claim against Morse/Diesel.

R.Civ.P. 8(e)(2); *see also* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1283 (1990), this does not excuse a party from being bound by its own explicit admissions of fact. Nor was it necessary, under the facts of this case, for F & D to admit the truth of plaintiff's belief as part of an alternative pleading strategy. In its answer, F & D had the option of voicing its uncertainty by, *e.g.*, stating that F & D was without knowledge or information sufficient to form a belief as to the truth of Morse/Diesel's averment. *See* Fed.R. Civ.P. 8(b). Instead, F & D chose to make an admission and is now bound by it, even though that admission has the effect of negating an essential element of F & D's fraud counterclaim. Without an untrue statement by Morse/Diesel, F & D's counterclaim cannot stand.

■ While it is unnecessary to reach the counterclaim defendants' remaining arguments for dismissal, the Court notes that F & D has failed to plead damages, another essential element of its counterclaim. F & D alleges that it "has been damaged in that it agreed to reimburse amounts that it would otherwise not have been obligated to reimburse, and has incurred and is continuing to incur substantial legal fees ... concerning the Reimbursement Agreement." Counterclaim ¶ 38. In its memorandum of law submitted in connection with the motion currently before the Court, F & D expands its conception of its damages to include a deprivation of its "right to elect one of the three options available to it" under the Bond. F & D Mem. at 30.

However, F & D does not allege that it has yet incurred a penny of expenses under the Reimbursement Agreement, other than legal fees. While the Reimbursement Agreement did reduce F & D's options to the single obligation of reimbursement, it also had the effect of causing Morse/Diesel to refrain from declaring a default and triggering any of F & D's Bond obligations. It is as yet unclear whether F & D will ever be required to make any payments under the Reimbursement Agreement, and the Court fails to see that F & D

has been damaged in any way by this state of affairs.

■ Furthermore, under New York law, "[d]amages attributable solely to the existence of litigation are clearly insufficient to sustain the necessary element of damages" in a fraud claim. *Raymond Corp. v. Coopers & Lybrand*, 105 A.D.2d 926, 482 N.Y. S.2d 377, 379 (3d Dep't 1984). F & D's reliance on *Fugazy Travel Bureau, Inc. v. Ernst & Ernst*, 31 A.D.2d 924, 298 N.Y. S.2d 519 (1st Dep't 1969), a case involving allegations of money damages resulting from stock fraud, in addition to a claim for attorneys' fees, is therefore misplaced.

Accordingly, because F & D has failed sufficiently to plead at least two of the elements of its fraud counterclaim, the Court must grant counterclaim defendants' motion to dismiss. Because F & D's admission of the truth of the alleged misrepresentation on which its claim depends is binding in this litigation, the fraud counterclaim is dismissed with prejudice.

B. Counterclaim for Breach of Covenant of Good Faith and Fair Dealing

■ F & D also alleges a breach of the Bond's implied covenant of good faith and fair dealing by counterclaim defendants. A breach of an implied covenant of good faith and fair dealing occurs when

the express terms [of a contract] may not have been technically breached, [but] one party has nonetheless effectively deprived the other of those express, explicitly bargained-for benefits.... Viewed another way, the implied covenant of good faith is breached only when one party seeks to prevent the contract's performance or to withhold its benefits.

*Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.*, 716 F.Supp. 1504, 1517 (S.D.N.Y. 1989).

F & D cannot prevail on this counterclaim for two reasons. First, a party must be subject to a duty of good faith and fair dealing under a contract before it can be liable for any alleged breach. As the counterclaim defendants point out, they are not signatories to the Bond, but are merely named therein as obligees. F & D has

failed to cite, and this Court's research has failed to reveal, any authority imposing a positive duty of this kind running from the *obligee* of a bond to the surety. While acts of an obligee may serve to excuse a surety from liability under a bond, *see, e.g., Cam-Ful Indus. v. Fidelity & Deposit Co.*, 922 F.2d 156, 161–63 (2d Cir.1991); 11 N.Y. Jur.2d, Bonds § 68, the obligee is not thereby rendered liable to the surety.

■ Although no action has been brought on the Bond itself, F & D maintains that the Bond's reference to the subcontract between plaintiff and Jackson transforms plaintiff's duties under the subcontract into obligations under the Bond. The Court remains unconvinced that the fulfillment by plaintiff of its duties under the subcontract is anything more than a condition precedent to F & D's obligations as surety. As the Second Circuit admonished F & D in a separate case earlier this year, "[u]nder New York law, it is well established that '[a] compensated, corporate surety ... is not a favorite of the law and its contract of suretyship will be construed in a manner most favorable to a claimant.'" *Cam-Ful Indus., supra,* 922 F.2d at 163 (quoting *Timberline Elec. Supply Corp. v. Insurance Co. of North Am.,* 72 A.D.2d 905, 906, 421 N.Y.S.2d 987, 988 (1979), *aff'd,* 52 N.Y.2d 793, 436 N.Y.S.2d 707, 417 N.E.2d 1248 (1980)). Thus, any ambiguity in the language of the Bond as to the obligees' duties toward F & D must be construed against F & D.

Second, even if the counterclaim defendants were subject to an implied duty of good faith and fair dealing under the Bond, F & D's allegations of bad faith are identical to its allegations of fraud by the counterclaim defendants.[4] Because of the inextricable link between the bad faith breach of contract counterclaim and the fraud counterclaim, and the lack of any other basis for the contract claim, the dismissal of the fraud counterclaim is fatal to the contract claim. Accordingly, F & D's second counterclaim for breach of the covenant of good faith and fair dealing is dismissed with prejudice.

## II.  Motion to Strike Affirmative Defense

Plaintiff also moves to strike F & D's ninth affirmative defense, pursuant to Fed. R.Civ.P. 12(f). "A motion to strike an affirmative defense under Rule 12(f) ... for legal insufficiency will not be granted 'unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense.'" *William Z. Salcer, Panfield, Edelman v. Envicon Equities Corp.,* 744 F.2d 935, 939 (2d Cir.1984) (*quoting Durham Indus. v. North River Ins. Co.,* 482 F.Supp. 910, 913 (S.D.N.Y.1979)); *see also Essex Music, Inc. v. ABKCO Music & Record, Inc.,* 743 F.Supp. 237, 240 (S.D.N.Y.1990). F & D's ninth affirmative defense states that "[i]n the event of any determination that plaintiff relied upon any purported 'representation' by F & D, which is expressly denied, then plaintiff, among others, fraudulently induced F & D to enter into the Reimbursement Agreement." Answer at 9–10.

For the same reasons that F & D's admission renders futile its fraud counterclaim, F & D will be unable to prove "any state of the facts ... in support of [its ninth affirmative] defense." The Court therefore grants plaintiff's motion to strike F & D's ninth affirmative defense.

## III.  Motion for Sanctions

■ Counterclaim defendants ask the Court to impose sanctions on F & D for the filing of unfounded counterclaims, pursuant to Fed.R.Civ.P. 11. The Second Circuit has explained that "a violation of rule 11 is triggered in either of two situations: '... when it appears that a pleading has been interposed for any improper purpose, *or*

---

**4.** F & D alleges that

the counterclaim defendants in bad faith and through misrepresentations defrauded F & D into assuming an obligation in addition to the choice of options ... under the Bond.... As a consequence of the counterclaim defen-

dants' bad faith and misrepresentations, F & D executed the Reimbursement Agreement.... The conduct of the counterclaim defendants constitutes a breach of the covenant of good faith and fair dealing.

Counterclaim ¶¶ 43, 44.

*where,* after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.'" *O'Malley v. New York City Transit Authority,* 896 F.2d 704, 705–06 (2d Cir.1990) (quoting *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987)).

In the instant case, although the Court has found F & D's counterclaims to be without merit, the Court does not consider them to be altogether frivolous. Therefore, the Court declines to impose sanctions upon F & D.

*IV. F & D's Cross–Motions*

█ F & D asks the Court to bifurcate the trial of Count I of plaintiff's amended complaint from that of Counts II and III of that complaint, and to stay discovery related to Counts II and III. Morse/Diesel alleges three causes of action against F & D: breach of the Reimbursement Agreement for failure to reimburse Morse/Diesel for alleged overpayments to Jackson ("Count I"); breach of the implied covenant of good faith and fair dealing under the Bond ("Count II"); and fraud ("Count III").

"A motion to sever and stay under Fed. R.Civ.P. 42(b) is addressed to the discretion of the court, and must be denied unless it appears that separate trials are necessary 'in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy....'" *Barr v. Dramatists Guild, Inc.,* 573 F.Supp. 555, 561 (S.D.N.Y.1983) (quoting Fed.R.Civ.P. 42(b); citing *In re Master Key Antitrust Litigation,* 528 F.2d 5, 14 (2d Cir.1975)); *cf. Getty Petroleum Corp. v. Island Transp. Corp.,* 862 F.2d 10, 15 (2d Cir.1988), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989); *Katsaros v. Cody,* 744 F.2d 270, 278 (2d Cir.), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984). The "separation of issues for trial is not to be routinely or-

dered." Fed.R.Civ.P. 42(b), advisory committee note.

Generally speaking, bifurcation is most frequently ordered when the resolution of one claim or issue may obviate the need for trial of other, more complicated issues. *See, e.g., Sogmose Realties, Inc. v. Twentieth Century–Fox Film Corp.,* 15 F.R.D. 496, 497 (S.D.N.Y.1954) (Rule 42(b) motion granted where trial of preliminary issue might dispose of multi-million dollar antitrust suit). Otherwise, "piecemeal litigation is not ... favored," and bifurcation is inappropriate " 'in cases where the facts are so inextricably interwoven that [separation] is impossible or at least manifestly unfair.' " *Air King Products Co. v. Hazeltine Research, Inc.,* 10 F.R.D. 381, 383 (E.D.N.Y.1950) (quoting *Collins v. Metro–Goldwyn Pictures Corp.,* 106 F.2d 83, 87 (2d Cir.1939)). In deciding a Rule 42(b) motion, "courts often try to establish if the issues would involve the same witnesses or not." *Organic Chemicals, Inc. v. Carroll Products, Inc.,* 86 F.R.D. 468, 470 (W.D. Mich.1980).

In the instant action, it is not apparent that separate trials of plaintiff's claims will result in greater efficiency or economy from the point of view of either the Court or the litigants. Although Counts II and III primarily concern the events surrounding the negotiation and execution of the Reimbursement Agreement, they also involve issues of costs incurred by Jackson in its work under the subcontract and payments made by Morse/Diesel to Jackson, issues that will also be central to Count I. Thus, the issues raised in Counts I, II, III are interrelated to a certain extent, and there exists a likelihood of an overlap in trial witnesses and other evidence. For these reasons, F & D's motion to bifurcate the trial of plaintiff's claims is denied. Having concluded that the most practicable way to proceed in this action is to address all of the issues in a single trial, the Court also denies F & D's motion for a stay of discovery.

CONCLUSION

For the reasons set forth above, counterclaim defendants' motion to dismiss F &

D's counterclaims is granted in its entirety. Plaintiff's motion to strike F & D's ninth affirmative defense is also granted.

Counterclaim defendants' motion for sanctions is denied.

F & D's cross-motions for bifurcation and a stay of discovery are denied.

SO ORDERED.