**DURHAM INDUSTRIES, INC.,**
**Plaintiff-Appellee-Cross-Appellant,**

v.

**The NORTH RIVER INSURANCE COMPANY,**
**Defendant-Appellant-Cross-Appellee.**

**Nos. 201, 271, Dockets 81–7305, 81–7395.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 2, 1981.
Decided Feb. 25, 1982.

Philip Schlau, New York City (Newman & Schlau, P.C., and John W. Manning, New York City on the brief) for defendant-appellant-cross-appellee.

Lawrence Lauer, New York City, for plaintiff-appellee-cross-appellant.

Before MOORE, TIMBERS and VAN GRAAFEILAND, Circuit Judges.

**VAN GRAAFEILAND, Circuit Judge:**

The North River Insurance Company appeals from a $32,558.21 judgment of the United States District Court for the Southern District of New York, which followed a jury award of damages in prima facie tort to Durham Industries, Inc., and from Judge Sweet's denial of North River's motion for judgment n.o.v. Durham cross-appeals from Judge Sweet's orders which dismissed Durham's cause of action for punitive damages and denied Durham's motion for a new trial on the issue of punitive damages. Because there was insufficient evidence of a prima facie tort to support the jury verdict and Durham has no actionable claim for punitive damages under New York law, we reverse the judgment and remand to the district court with instructions to dismiss the complaint.

In 1974, Durham commenced an action in the Southern District of New York against Ta Peng Steamship Company, Ltd., a Taiwanese corporation, to recover damages for the non-delivery of goods for which Ta Peng had issued a bill of lading. Durham attached a bank account belonging to Ta Peng containing approximately $300,000, and North River issued a bond or undertaking supporting the discharge of this attachment. As collateral for the undertaking, Ta Peng gave North River an irrevocable letter of credit issued by Franklin National Bank in the amount of $350,000. Subsequently, this was replaced by a new letter of credit drawn on First National Citibank, which, through oversight, North River permitted to expire on April 18, 1976.

On April 28, 1976, Durham obtained a judgment against Ta Peng in the amount of $223,670.08. When Ta Peng failed to pay the judgment, Durham looked to North River for payment pursuant to the undertaking. However, North River also refused to pay. Durham then sued North River on the bond in the Southern District, and North River sued Ta Peng in State court for indemnity. North River interposed an answer to Durham's complaint, raising, upon

information and belief, the affirmative defense of fraud. North River alleged that Durham and Ta Peng conspired to extend Durham's action against Ta Peng beyond April 18, 1976 without notice to North River, thereby depriving North River of its collateral. When Durham's case finally was reached for trial, North River's defense of fraud was found to be without merit, and, on November 16, 1978, judgment was entered against North River in the amount of $223,670.08 plus interest at 6% from April 28, 1976. North River paid the judgment but shortly thereafter Durham commenced the instant action alleging prima facie tort and abuse of process.

In support of its claim of prima facie tort, Durham introduced a series of letters and memoranda from North River's file, which reflected a continuing effort on the part of North River to obtain renewed collateral or payment from Ta Peng before paying Durham. For example, on July 14, 1976, William Windrow, an Assistant Vice-President of North River, sent an inter-office memorandum to J. J. Myers, Senior Vice-President, pertaining to possible settlement with Ta Peng. That same day, Windrow wrote reinsurers on the undertaking informing them of the proposed settlement and stating with regard to Durham's law suit, "[w]e are defending that action but are not at all confident as to the success of our defenses."

On July 16, 1976, Durham moved for an order dismissing the affirmative defense of fraud and for summary judgment. North River opposed on the ground it had raised material issues of fact which could not be resolved without discovery. The district court agreed and, on November 4, 1976, denied Durham's motion.

In the meantime, North River settled its action against Ta Peng. The Steamship Company agreed to make twelve monthly payments of $20,000 to North River and, on August 25, 1976, signed a confession of judgment to be entered in the event of a default. On September 23, 1976, Windrow was informed by counsel that Ta Peng had paid its first installment of $20,000. Counsel also stated that Durham's summary judgment motion was pending and that "the main thrust of our opposition is to request Judge Lasker to deny Summary Judgment and permit us to conduct preliminary proceedings, including depositions, discovery and inspection."

On November 3, 1976, Windrow wrote the reinsurance companies that Ta Peng had paid two installments and that North River was "hopeful that we will receive full collateral prior to our being called upon to pay the outstanding judgment." In fact, Ta Peng made only three payments totaling $60,000 before defaulting. Following the default, judgment was entered against Ta Peng.

North River did not advise Durham or the court that it had brought an action against Ta Peng or that the action had been settled in North River's favor. On November 15, 1976, Durham served interrogatories. Interrogatory No. 47 asked whether North River had had any communication with Ta Peng after April 18, 1976. On January 3, 1977, North River answered in the negative. Interrogatories No. 37 and 50 asked North River to state whether it had any security or property which would serve to indemnify it and, if so, to state when and from whom it was received. North River did not answer either interrogatory on January 3. It did state, however, that it had attempted unsuccessfully to attach property owned by Ta Peng. It was not until March 11, 1977, that North River answered interrogatory No. 37, revealing that it had received $60,000 from Ta Peng.

Durham commenced the instant action against North River in April 1979, seeking special and punitive damages for abuse of process and prima facie tort. The complaint was amended at trial to allege a cause of action for bad faith by an insurer in discharging its obligations. The district court dismissed the causes of action for bad faith and abuse of process and the demand for punitive damages, but submitted to the jury the claim of prima facie tort. The jury returned a verdict against North River in the amount of $32,558.21, which, quite obviously, was based on the difference between

the statutory 6% interest incorporated in the judgment and the cost to Durham of borrowing $223,670.08 during North River's delinquency.

The introduction into American jurisprudence of the doctrine of prima facie tort is credited generally to Justice Holmes. *See ATI, Inc. v. Ruder & Finn, Inc.*, 42 N.Y.2d 454, 458, 398 N.Y.S.2d 864, 368 N.E.2d 1230 (1977). As construed by Justice Holmes in the seminal case of *Aikens v. Wisconsin*, 195 U.S. 194, 25 S.Ct. 3, 49 L.Ed. 154 (1904), the doctrine is based upon the doing of a harm maliciously or malevolently "for the sake of the harm as an end in itself, and not merely as a means to some further end legitimately desired." *Id.* at 203, 25 S.Ct. at 5. *See also American Bank & Trust Co. v. Federal Reserve Bank*, 256 U.S. 350, 358, 41 S.Ct. 499, 500, 65 L.Ed. 983 (1921).

The concept was first recognized in New York in *Beardsley v. Kilmar*, 236 N.Y. 80, 140 N.E. 203 (1923). Following the lead of Justice Holmes, the New York Court of Appeals held that liability in tort could attach to the performance of otherwise lawful conduct but that "the genesis which will make a lawful act unlawful must be a malicious one unmixed with any other and exclusively directed to injury and damage of another." *Id.* at 89–90, 140 N.E. 203. Since *Beardsley*, New York courts have emphasized repeatedly that malice is an essential element of prima facie tort and that a claim of prima facie tort does not lie where the defendant has any motive other than a desire to injure the plaintiff. *See, e.g., RKO-Stanley Warner Theatres, Inc. v. Century Circuit, Inc.*, 37 A.D.2d 828, 829, 325 N.Y. S.2d 270 (1971); *Squire Records, Inc. v. Vanguard Recording Society, Inc.*, 25 A.D.2d 190, 191–92, 268 N.Y.S.2d 251 (1966); *Benton v. Kennedy-Van Saun Mfg. & Eng. Corp.*, 2 A.D.2d 27, 29, 152 N.Y.S.2d 955 (1956); *Korry v. International Telephone & Telegraph Corp.*, 444 F.Supp. 193, 195 (S.D. N.Y.1978).

[R]ecovery has been limited to those instances where the sole motivation for the damaging acts has been a malicious intention to injure the plaintiff. Where there are other motives, *e.g.*, profit, self-interest, business advantage, there is no recovery under tort prima facie. *Squire Records, Inc. v. Vanguard Recording Society, Inc., supra*, 25 A.D.2d at 191–92, 268 N.Y.S.2d 251.

In considering North River's contention that the evidence was insufficient to support the jury verdict, we must determine whether "there can be but one reasonable conclusion as to the proper judgment." 5A Moore's Federal Practice ¶ 50.07[2] (2d ed. 1981). If, after viewing all the evidence most favorably to plaintiff, we cannot say that the jury could reasonably have returned the verdict in its favor, our duty is to reverse. *H. L. Moore Drug Exchange v. Eli Lilly & Co.*, 662 F.2d 935 at 946 (2d Cir. 1981). The district court instructed the jury, correctly and without exception, that for the liability of prima facie tort to attach, "the intent to injure or harm the plaintiff must have been the sole motive of the defendant." Viewed in the light most favorable to the plaintiff, the evidence does not support an affirmative jury finding on this issue.

The most the jury permissibly could infer from the proof was that North River asserted the affirmative defense of fraud in order to postpone the day it would have to make good on its bond, without any expectation of prevailing on the merits of the defense. The jury might have concluded that North River falsely answered plaintiff's interrogatories to conceal the existence of its lawsuit against Ta Peng, but such concealment resulted from the same motivation. The evidence established beyond peradventure that North River acted purely out of self-interest to mitigate or avoid a business loss. It was insufficient to support liability on a theory of prima facie tort.[1]

---

1. Except as the elements of Durham's abuse of process claim relate to its cause of action for prima facie tort, Durham does not contend that the district court's dismissal of that claim was

error. The district court found no causal relation between the breach, if any, of the duties which North River's counsel owed to the court

We find no merit under New York law in Durham's contention that the district court should have submitted to the jury Durham's claim for punitive damages based on a "tort of bad faith". As the beneficiary of North River's undertaking, Durham had an enforceable contract right against North River. *Daniel-Morris Co. Inc. v. Glens Falls Indemnity Co.*, 308 N.Y. 464, 468–69, 126 N.E.2d 750 (1955); *Area Masonry, Ltd. v. Dormitory Authority*, 64 A.D.2d 810, 407 N.Y.S.2d 279 (1978); *see* Fed.R.Civ.P. 65.1. Durham was entitled to rely not only upon the express provisions of the undertaking, but also upon the implied covenant of good faith and fair dealing that exists in every contract. *See Gordon v. Nationwide Mutual Insurance Co.*, 30 N.Y.2d 427, 437, 334 N.Y.S. 601, 285 N.E.2d 849 (1972), *cert. denied*, 410 U.S. 931, 93 S.Ct. 1374, 35 L.Ed.2d 593 (1973). However, under New York law, punitive damages may not be awarded in breach of contract cases, which involve a private wrong and where no public rights are involved. *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354, 358, 386 N.Y.S.2d 831, 353 N.E.2d 793 (1976). There must be fraud "aimed at the public generally", evincing a "high degree of moral turpitude", and demonstrating "such wanton dishonesty as to imply a criminal indifference to civil obligations". *Walker v. Sheldon*, 10 N.Y.2d 401, 405, 223 N.Y.S.2d 488, 179 N.E.2d 497 (1961). *See Sanfilippo v. Metropolitan Life Insurance Co.*, 74 A.D.2d 600, 424 N.Y.S.2d 511 (1980); *Hubbell v. Trans World Life Insurance Co.*, 70 A.D.2d 949, 418 N.Y.S.2d 110 (1979); *Thaler v. North River Insurance Co.*, 63 A.D.2d 921, 406 N.Y.S.2d 66 (1978); *John C. Supermarket, Inc. v. New York Property Insurance Underwriting Ass'n*, 60 A.D.2d 807, 400 N.Y.S.2d 824 (1978); *M.S.R. Associates Ltd. v. Consolidated Mutual Insurance Co.*, 58 A.D.2d 858, 396 N.Y.S.2d 684 (1977); *Buttignol Construction Co. v. Allstate Insurance Co.*, 22 A.D.2d 689, 253 N.Y.S.2d 172 (1964), *aff'd* 17 N.Y.2d 476, 266 N.Y.S.2d 982, 214 N.E.2d 162 (1965).[2] There was no such fraud in the case at bar.

In directing that the complaint be dismissed, we do not condone the conduct of the North River Insurance Company which the trial court found to be improper. However, the New York Superintendent of Insurance has adequate authority to take disciplinary action if he finds it to be appropriate under the circumstances. *See* N.Y. Ins. Law § 40–d (McKinney Supp. 1981–1982).

The judgment in favor of Durham is reversed, and the matter is remanded to the district court with instructions to dismiss the complaint. No costs to either party.

TIMBERS, Circuit Judge, concurring in part and dissenting in part.

I concur in the majority's dismissal of Durham's cross-appeal, since I agree that under New York law Durham has no cause of action against North River for either bad faith breach of contract or punitive damages.

With respect to the majority's reversal of the judgment, Robert W. Sweet, *District Judge*, entered upon a jury verdict in favor of Durham awarding damages based on prima facie tort, however, I believe that the majority has misread New York law regarding prima facie tort. From this part of the majority opinion, I therefore respectfully dissent.

Under New York law, four elements must be shown to establish a case of prima facie tort. They are: "[1] the infliction of intentional harm, [2] resulting in damage, [3] without excuse or justification, [4] by an act or a series of acts which would otherwise be lawful." *ATI, Inc. v. Ruder & Finn, Inc.*, 42 N.Y.2d 454, 458, 368 N.E.2d 1230, 398 N.Y.S.2d 864, 866 (1977), quoting *Ruza v. Ruza*, 286 A.D. 767, 769, 146 N.Y.S.2d 808, 811 (1st Dept. 1955). I agree with the majority that Durham has proven the

---

and the damages which Durham allegedly sustained.

2. *Greenspan v. Commercial Insurance Co.*, 57 A.D.2d 387, 395 N.Y.S.2d 519 (1977), relied upon by counsel for Durham, deals only with the sufficiency of a complaint. So far as *Greenspan* conflicts with the cited cases herein, it does not represent the prevailing New York view.

first, second, and fourth elements. I disagree with the majority's holding that Durham has not established the third element.

The majority states that "New York courts have emphasized repeatedly that . . . a claim of prima facie tort does not lie where the defendant has any motive other than a desire to injure the plaintiff." I recognize that the cases cited by the majority stand for that proposition. The majority's list of cases, however, is conspicuous for the absence of any decision by the New York Court of Appeals. The "sole motivation" test appears to be followed only by the New York Appellate Division courts and by the federal district courts. It does not appear to be an accurate statement of the law of New York as enunciated by the New York Court of Appeals.

It seems to me that the proper test under New York law is not whether malice was the sole motive for the intentional harm, but whether the defendant has any other legitimate, legally cognizable motive for his action.[1] As the New York Court of Appeals stated in *ATI, supra:*

> "Of course, one can always advance an explanation for one's conduct but, in this type of case, it must be an excuse or justification which the law will recognize. . . . Underlying the question of excuse or justification, it has been noted, is the question of whether the public's gain outweighs the harm to another." 42 N.Y.2d at 459, 368 N.E.2d at 1233, 398 N.Y.S.2d at 867.

*Accord, Opera on Tour, Inc. v. Weber,* 285 N.Y. 348, 34 N.E.2d 349 (1941); *Burns Jackson Miller Summit & Spitzer v. Lindner,* 108 Misc.2d 458, 437 N.Y.S.2d 895, 902 (Sup.Ct., Queens Co., 1981).

Thus, the correct approach to the problem here presented, I suggest, is to examine whether North River's non-malicious motives were legitimate, legally cognizable

ones—whether they would result in gain to the public which outweighed the harm to Durham. The record before us strongly indicates that they were not of that character. The jury was entitled to find that North River delayed, by the assertion of its unfounded affirmative defense of fraud, the payment of its legal obligation to Durham.[2] As an excuse for this behavior, North River asserts that it desired to attempt to recover the $223,670.08 from a third party before it paid that amount to Durham. This surely is not a proper justification for North River's action. Conduct such as this results in no gain to the public whatsoever. Indeed, the public is the victim of such shoddy and dishonest business dealings.

If conduct such as that by North River is to be considered proper, then some shrewd persons may attempt to avoid timely payment of their debts, ostensibly while waiting to collect their accounts receivable. If the stakes are high enough, they may even be willing to defend a lawsuit to delay payment, knowing that what they can earn on the money at market rates will more than cover their attorney's fees and the artificially low legal rate of interest they will eventually have to pay on the judgment entered against them. Under the rationale of today's majority's opinion, they will be able to engage in such dishonest behavior, secure in the knowledge that they will prevail should their creditors sue them upon a claim of prima facie tort.

In short, in my view Durham clearly has established all the elements of a case of prima facie tort. It sustained obvious injury—the loss of the use of $223,670.08—as a result of North River's deliberate action in asserting the unfounded fraud defense. The assertion of this defense, ordinarily a lawful action, was rendered tortious by North River's lack of any legitimate, legally

---

1. The majority quotes Justice Holmes' classic formulation of the doctrine of prima facie tort. That formulation is that the tort will not lie where the harm was committed "as a means to some further end *legitimately* desired." *Aikens v. Wisconsin,* 195 U.S. 194, 203 (1904) (emphasis added).

2. The jury moreover, very well could have found that North River lied in its answers to interrogatories as part of its effort to delay payment.

cognizable excuse for asserting it. New York law provides Durham with a remedy for such injury.

From the majority's refusal to recognize that remedy by reversing the judgment entered on the jury verdict in favor of Durham, I respectfully dissent.