THOMAS H. SALKA et al., Respondents, v LUMBERMENS MUTUAL CASUALTY COMPANY, Appellant.

Third Department, April 30, 1987

---

### APPEARANCES OF COUNSEL

*Bouck, Holloway, Kiernan & Casey (Thomas O'Connor, Francis J. Holloway* and *Mary Ann D. Allen* of counsel), for appellant.

*Clute, Clute & Thompson (James W. Clute* of counsel), for respondents.

### OPINION OF THE COURT

WEISS, J. P.

On March 22, 1984, plaintiffs' home at 94 Main Street, Village of Keeseville, Clinton County, was destroyed by fire. The premises were insured under a homeowner's policy issued by defendant three weeks earlier. Plaintiffs gave prompt notice of the loss and timely rendered a statement of proof of loss. After plaintiffs were examined under oath on May 15, 1984, defendant forwarded an authorization form seeking authority to obtain "any and all information regarding financial, business or personal transactions" between plaintiffs and "any other individual or entity". Plaintiffs responded that the form was too broad, but offered to provide specific documents upon request. By letter of August 17, 1984, defendant advised plaintiffs that a failure to sign the authorization form violated the cooperation provisions of the policy and might result in a forfeiture of their rights under the policy. In response, plaintiffs reiterated that the form was overly broad and specifically inquired whether defendant had "reason to suspect that the insureds intentionally started the fire". On September 27, 1984, defendant rejected the claim in writing, citing plaintiffs' failure to cooperate in the investigation and to provide the documentation requested, "together with other good and sufficient reasons".

Plaintiffs commenced the instant action in October 1985 seeking compensatory damages for the property loss sustained and, in the second cause of action, to recover punitive damages alleging defendant's bad-faith breach of duty to plaintiffs

under the terms of the policy. In its answer, defendant asserted as affirmative defenses that the complaint failed to state a cause of action for punitive damages, that plaintiffs deliberately caused the fire and that plaintiffs violated the policy by failing to provide the requested information authorization. Thereafter, insofar as here pertinent, defendant moved for an order pursuant to CPLR 3211 (a) (7) and CPLR 3212 dismissing the claim for punitive damages and the attendant request for counsel fees. In response, plaintiffs moved for leave to amend their complaint to assert additional allegations relative to the punitive damages claim and to increase the amount of punitive damages to $100,000. In support of the request, plaintiffs emphasized that defendant's answer provided the first notice that their claim was rejected upon a contention of arson. Supreme Court refused to dismiss plaintiffs' claim for punitive damages and, instead, granted plaintiffs' motion to amend the complaint. Defendant has appealed.

The crux of this appeal is whether Supreme Court erred in denying defendant's motion for partial summary judgment dismissing plaintiffs' claim for punitive damages. This court has only recently reiterated that "punitive damages are not available for an isolated transaction such as the breach of an insurance contract, even if that breach was committed willfully and without justification" (*Monroe v Providence Wash. Ins. Co.*, 126 AD2d 929 [and cases cited therein]). We do recognize that in actions premised on fraud, such as *Greenspan v Commercial Ins. Co.* (57 AD2d 387) relied on by Supreme Court, punitive damages are available to remedy a private wrong where morally culpable conduct is established (*see, Borkowski v Borkowski*, 39 NY2d 982; *Hebert v State Farm Mut. Auto. Ins. Co.*, 124 AD2d 958; *Keen v Keen,* 113 AD2d 964, 965-966, *lv dismissed* 67 NY2d 602, 646; *cf., Supreme Automotive Mfg. Corp. v Continental Cas. Co.*, 126 AD2d 153; *Samovar of Russia Jewelry Antique Corp. v Generali, Gen. Ins. Co.*, 102 AD2d 279, 282-283). Here, plaintiffs essentially maintain that defendant's bad-faith rejection of their claim extends beyond a mere breach of the insurance contract, and is tantamount to a fraudulent breach of the insurer's duty of good faith and fair dealing (*see, DeMarco v Federal Ins. Co.*, 99 AD2d 114, 115-116). To recover on this premise, however, it was necessary for plaintiffs to make an "extraordinary showing of a disingenuous or dishonest failure to carry out a contract" (*Gordon v Nationwide Mut. Ins. Co.*, 30 NY2d 427, 437, *cert denied* 410 US 931; *accord, Home Ins. Co. v Karan-*

*tonis,* 124 AD2d 368; *Marsch v Massachusetts Indem. & Life Ins. Co.,* 101 AD2d 952, 953, *lv dismissed* 63 NY2d 603, 769). Giving due regard to the procedural posture of this case *(see, Canonico v Hayes,* 127 AD2d 911), we find that plaintiffs' evidentiary submissions fall short of the required showing of bad faith and are therefore inadequate.

Plaintiffs premise their claim for punitive damages on defendant's failure to timely inform them that the claim would be denied on the basis of arson and on defendant's unjustified insistence that plaintiffs sign the authorization form. With respect to the latter point, even were we to agree with plaintiffs that the authorization request was overly broad and plaintiffs' offer to provide particular documents on request was reasonable, defendant's insistence on having the form signed is certainly not morally reprehensible conduct, particularly when one considers that numerous documents were apparently destroyed in the fire *(see, Williams v American Home Assur. Co.,* 97 AD2d 707, 708, *affd* 62 NY2d 953). The more significant allegation concerns defendant's purported misleading of plaintiffs in order to gain an unfair advantage in the arson defense. The record establishes that defendant retained an independent arson investigator, J. Eugene Bricault, who investigated the fire scene on March 24, 1984 and ultimately concluded that the fire was of an incendiary nature. This conclusion was communicated to defendant on April 10, 1984, but defendant neither contacted the appropriate government officials *(see,* Insurance Law § 319 [b]) nor informed plaintiffs, despite the latter's specific inquiry on the arson question. The problem is compounded by plaintiffs' assertion that both defendant and the Keeseville Fire Department authorized the removal of the fire debris in February or March 1985. As a result, plaintiffs maintain that they were fraudulently deprived of an opportunity to conduct their own tests at the fire scene to disprove the arson defense.

It is evident that following Bricault's investigation and plaintiffs' examinations under oath, which confirmed that plaintiff Thomas H. Salka was on the premises at the time of the fire and that plaintiffs were experiencing some financial difficulties, questions of fact were raised as to whether the fire was deliberately set and whether plaintiffs had a financial motive to procure the loss. However, defendant's conduct in failing to expressly apprise plaintiffs of the arson defense has left plaintiffs in the precarious position of not having the benefit of an evaluation of the fire debris by their own expert.

Defendant explained that it did not inform the authorities of its investigation results because Bricault inferred from the presence of a member of the Clinton County Arson Task Force at the scene during the investigation that the authorities were already treating the fire as suspicious in nature and that further notice was unnecessary. Defendant further asserts that the fact it retained an arson investigator and thoroughly deposed plaintiffs as to their whereabouts on the day of the fire and their financial status should have alerted plaintiffs to the prospect of an arson defense, particularly since plaintiffs had retained counsel. Although defendant was unable to verify whether it provided authorization for removal of the debris, it emphasizes that a period of approximately six months elapsed between the rejection of the claim and the debris removal, during which time plaintiffs could readily have evaluated the premises. We note that plaintiffs have available to them the evaluations of James King, the Clinton County Fire Coordinator, and Edward Venette, a member of the Clinton County Arson Task Force, both of whom conducted on-scene investigations and opined that the fire was not of a suspicious nature.

These circumstances prevailing, while defendant might better have expressly informed plaintiffs that arson was a premise for the rejection of their claim in September 1984, we do not find defendant's conduct so morally reprehensible as to justify the imposition of punitive damages (cf., *Keen v Keen*, 113 AD2d 964, *supra; Hutchins v Utica Mut. Ins. Co.*, 107 AD2d 871; *DeMarco v Federal Ins. Co.*, 99 AD2d 114, 115-116, *supra; Greenspan v Commercial Ins. Co.*, 57 AD2d 387, 388, *supra*). A reasonable basis existed to withhold payment on the claim and to assume that plaintiffs were cognizant of a potential arson defense. Accordingly, Supreme Court erred in failing to dismiss plaintiffs' second cause of action seeking punitive damages and counsel fees (see, *Mighty Midgets v Centennial Ins. Co.*, 47 NY2d 12, 21; *Jacobson v New York Prop. Ins. Underwriting Assn.*, 120 AD2d 433, 435).

MIKOLL, YESAWICH, JR., and HARVEY, JJ., concur.

Order modified, on the law, without costs, by reversing so much thereof as denied defendant's motion for partial summary judgment dismissing the second cause of action; said motion granted and second cause of action in the complaint dismissed; and, as so modified, affirmed.