MORSE/DIESEL, INC., a Delaware
Corporation, Plaintiff,

v.

FIDELITY AND DEPOSIT COMPANY
OF MARYLAND, a Maryland Corpora-
tion, Defendant & Third–Party Plain-
tiff,

v.

T. FREDERICK JACKSON, INC.,
Third–Party Defendant.

No. 86 Civ. 1494 (PKL).

United States District Court,
S.D. New York.

June 21, 1989.

Friedman, Wang & Bleiberg, P.C., New York City (Peter N. Wang and Neal Brickman, of counsel), for plaintiff.

Wolf, Block, Schorr and Solis–Cohen, Philadelphia, Pa. (Ian A.L. Strogatz, Kenneth J. Warren and Gary L. Leshko, of counsel), and Hart & Hume, New York City, for defendant & third-party plaintiff Fidelity and Deposit Co. of Maryland.

## OPINION AND ORDER

LEISURE, District Judge:

This diversity action is presently before the Court on plaintiff's motion to supplement and amend its initial complaint, pursuant to Fed.R.Civ.P. 15. Defendant opposes such amendment, and alternatively cross-moves to dismiss all counts of the proposed amended complaint (the "Amended Complaint"), pursuant to Fed.R.Civ.P. 12(b)(6). Defendant also requests sanc-

tions under Fed.R.Civ.P. 11, for the costs it incurred as a result of these motions.

## BACKGROUND

Plaintiff Morse/Diesel, Inc. ("plaintiff" or "Morse/Diesel") was the general contractor for the Times Square Hotel construction project (the "Project"), which eventually became known as the Marriott Marquis Hotel, and which currently fronts on the length of an entire city block on the west side of Broadway, in the Times Square area of New York City. On November 4, 1982, Morse/Diesel entered into an agreement with T. Frederick Jackson, Inc. ("Jackson"), whereby Jackson was to furnish labor, material, equipment and supervision necessary to provide and install a complete electrical system for the Project (the "Subcontract").

In connection with the Subcontract, defendant Fidelity and Deposit Company of Maryland ("defendant" or "F & D") issued a payment and performance bond (the "Bond") as surety for Jackson, binding itself for a total amount of $12,900,000. Subsequently, after substantial work had been done on the Project, F & D, Morse/Diesel and Jackson entered into a one-page letter agreement (the "Reimbursement Agreement"), which states that Morse/Diesel agreed to provide funds to enable Jackson to complete its work on the Project, and F & D agreed to reimburse Morse/Diesel for that portion, if any, of such future payments by Morse/Diesel to Jackson which exceeded the adjusted Subcontract price. The Reimbursement Agreement, which was signed by all parties, states that F & D acknowledged that "Morse/Diesel has taken the position that any payments they make after this date to ... [Jackson] will exceed the subcontract price. [F & D] acknowledge[s] that Jackson disputes that position." *See*, Exhibit A, attached to F & D Memorandum Dated July 1, 1988.

Morse/Diesel, in its original complaint filed on February 19, 1986, claimed that it had paid Jackson $7,239,359.17 in excess of the adjusted Subcontract price, and demanded reimbursement from F & D in that amount, pursuant to the Reimbursement

Agreement. F & D impleaded Jackson as a third-party defendant. Jackson then filed a counterclaim against Morse/Diesel, alleging, *inter alia*, that Morse/Diesel in fact owes Jackson some $11 million. *See* Jackson's Answer to Third–Party Complaint and Counterclaim Against Morse/Diesel, Inc. The parties have been conducting discovery for over two years. That discovery has focused primarily on the dispute between Morse/Diesel and Jackson, and predominately involved those parties. Neither a cutoff date for discovery nor a trial date has been set.

Morse/Diesel seeks leave of the Court to supplement the amount requested in the original complaint. (The original cause of action is hereinafter referred to as "Count I" of the Amended Complaint). Plaintiff also seeks permission to amend its original complaint by adding two new causes of action (referred to hereinafter as "Count II" and "Count III" of the Amended Complaint). Count II involves a "bad faith" claim against F & D. Count III is an action for fraudulent misrepresentation. *See* Morse/Diesel Memorandum Dated May 25, 1988, at p. 4. Counts II and III each contain a claim for $50 million in punitive damages. As indicated above, F & D opposes the proposed addition of Counts II and III, and, alternatively, F & D moves to dismiss all three counts of the proposed amended complaint, as well as the punitive damage elements of Counts II and III.

## DISCUSSION

### I. MOTION TO AMEND THE COMPLAINT

■ Morse/Diesel has moved to amend its complaint pursuant to Fed.R. Civ.P. 15(a).[1] Rule 15(a) "sets forth a policy in favor of granting leave to amend, stating that 'leave shall be freely given

when justice so requires'." *Jaser v. New York Property Insurance Underwriting Association*, 815 F.2d 240, 243 (2d Cir. 1987). A motion to amend should be denied only for reasons such as undue delay, bad faith, futility of the amendment, or resulting prejudice to the opposing party. *See Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 653 n. 6 (2d Cir.1987) (*citing State Teachers Retirement Board v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir.1981)); *Tokio Marine & Fire Insurance Co. v. Employers Insurance of Wausau*, 786 F.2d 101, 103 (2d Cir.1986) (*quoting Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)). Absent a showing of bad faith or undue prejudice to the opposing party, mere delay alone will not suffice as a basis for the district court to deny the right to amend. *Richardson Greenshields Securities, supra*, 825 F.2d at 653 n. 6. Moreover, parties have been permitted to amend their pleading to assert new claims long after they acquired facts necessary to support those claims. *See, e.g., Green v. Wolf Corp.*, 50 F.R.D. 220, 223 (S.D.N.Y.1970) (plaintiff was aware of facts asserted in amended complaint from outset of the case).

■ Despite these well-established and liberal standards, F & D has vigorously opposed allowing the amendments to the Complaint. F & D asserts that Morse/Diesel had knowledge of the material facts pled in support of Counts II and III when it filed the original complaint. F & D also argues that excessive delay between the filing of the original complaint and this motion should bar Morse/Diesel from presently adding the claims. The proposed amendments, including the punitive damages claims of both Counts II and III, are said to be in "bad faith," and F & D alleges

---

1. Morse/Diesel also moved, pursuant to Fed.R. Civ.P. 15(d), to supplement Count I by increasing the amount of damages sought, because of additional payments allegedly made by Morse/Diesel to Jackson after the commencement of this action. In its discretion, the Court may allow a party to employ a supplemental pleading to update an earlier pleading, or to change the amount of relief requested in the original pleading. *See generally* 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1504 (1971) at 536–37, and cases cited therein.

While it challenges the legal sufficiency of the original and supplemented claim, F & D has consented to the modification of amount. *See* F & D Memorandum Dated July 1, 1988, p. 1–2, n. 1. The Court here allows the requested supplementation.

that Morse/Diesel intended to create settlement pressure by raising the specter of broad and expensive discovery. *See* F & D Memorandum Dated July 1, 1988, pp. 18–19. Finally, F & D argues that the motion to amend should be denied on futility grounds, in that Counts II and III fail to state legally cognizable causes of action.

Morse/Diesel responds that the two additional claims for relief are based upon discovery that has taken place in this action. Morse/Diesel specifically refers to the depositions of Phillip Mahoney, Jackson's electrical consultant, and David V. Ward, F & D's consultant, which occurred in July and November, 1987, respectively. *See* Morse/Diesel Reply Memorandum Dated September 9, 1988, p. 8, n. 4. There is no support for F & D's contention that Morse/Diesel had knowledge of the relevant facts before the discovery, nor is the Court convinced that Morse/Diesel brought the additional claims for the purpose of harassing F & D or pressuring it to settle. The Court does not find any factual basis for a claim of unjust delay or bad faith.

Granting Morse/Diesel leave to amend its complaint would not result in undue prejudice against F & D. In *S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28 (2d Cir.1979) the Second Circuit held that plaintiff should have been allowed to amend its complaint to assert a new claim against defendant Chemical Bank, "after the parties *other* than the Bank had engaged in 'extensive discovery for over two years'". *Id.*, 608 F.2d at 42 (emphasis added) (*quoting* the District Court). The Second Circuit stated:

> In any event, even if Chemical's estimate that it would need several months to analyze all the discovery material is correct, this by itself is insufficient prejudice to deny leave to amend, particularly when trial has not yet commenced and is not likely to do so for some time.

*Id.*, 608 F.2d at 42.

In this action, discovery is proceeding and no trial date has been determined. It is true that prejudice may be found where amendment would cause undue hardship to the defendant. *H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.*, 112 F.R.D. 417, 419 (S.D.N.Y.1986). While the Court recognizes that F & D may be subject to some additional burden by these amendments, "[i]t is difficult to imagine an amendment to pleadings under Rule 15(a) that would not create some increased work to the opposing party." *International Bank v. Price Waterhouse & Co.*, 85 F.R.D. 140, 142 (S.D.N.Y.1980). The Court does not find that F & D will be impermissibly prejudiced, beyond the additional difficulty that is concomitant with the amendment of any pleading.

■ Finally, F & D claims that leave to amend should not be granted because the additional claims would be futile. The trial court has the discretion to grant a party leave to amend a complaint, even where the amended pleading might ultimately be dismissed. *Cf. S.S. Silberblatt, supra*, 608 F.2d at 42–43. In light of the liberal standards regarding motions to amend, the Court will presently allow the amendment. The consideration of the sufficiency of the additional proposed claims, as well as the sufficiency of Count I, will be dealt with in the following discussion of F & D's concurrent cross-motions to dismiss.

## II. MOTIONS TO DISMISS THE AMENDED COMPLAINT

F & D challenges each count of the Amended Complaint under Fed.R.Civ.P. 12(b)(6). A motion to dismiss under Rule 12 must be denied "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (*citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)); *Rauch v. RCA Corp.*, 861 F.2d 29, 30 (2d Cir.1988); *Morales v. New York State Department of Corrections*, 842 F.2d 27, 30 (2d Cir.1988). It is well established that the court must accept the pleader's allegations of facts as true, liberally construe those allegations, and make such reasonable inferences as may be drawn in its favor. *Dahlberg v. Becker*, 748 F.2d 85, 88 (2d Cir.1984), *cert. denied*,

470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985); *Murray v. City of Milford, Connecticut*, 380 F.2d 468, 470 (2d Cir. 1967). *See also Scheuer, supra*, 416 U.S. at 236, 94 S.Ct. at 1686; *Pross v. Katz*, 784 F.2d 455, 457 (2d Cir.1986). On a motion to dismiss, the court must "determine whether the facts set forth justify taking jurisdiction on grounds other than those most artistically pleaded." *Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555, 558 (2d Cir.1985).[2]

Fed.R.Civ.P. 8 requires only a "short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (*citing Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)). With these deferential standards in mind, each count of the Amended Complaint will be examined in turn.

### A. Count I

■ Count I is the original contractual action, wherein Morse/Diesel seeks to recover on the Reimbursement Agreement entered into by F & D, Jackson and Morse/Diesel. The agreement states, in pertinent part:

> [F & D] further agrees that it will reimburse Morse/Diesel for that portion of said payment, if any, which exceeds the adjusted subcontract price as ultimately determined (by litigation or arbitration or settlement, as the case may be), plus interest at the legal rate of New York State from the date of each such payment.

*See*, Exhibit A, attached to F & D Memorandum Dated July 1, 1988.[3]

F & D now moves, nearly three years after the commencement of the litigation, to dismiss Count I on what is, essentially, a ripeness-type challenge. F & D's position is that its obligation under the agreement will not arise until the conclusion of litigation or arbitration between Morse/Diesel and Jackson, which it argues is a condition precedent to any liability or duty to perform. F & D alleges that Morse/Diesel improperly and prematurely brought this action, prior to obtaining a final judicial determination of the amount, if any, by which the payments exceeded the adjusted subcontract price, and prior to any F & D refusal to pay such an amount.

Morse/Diesel responds that it is not required under the Indemnification Agreement to "liquidate its claim with Jackson before turning to F & D for reimbursement." Morse/Diesel Reply Memorandum Dated September 9, 1989, at p. 4. Morse/Diesel's position is that F & D's obligations under the Reimbursement Agreement were triggered by Morse/Diesel's actual payments of the allegedly excess sums to Jackson. Morse/Diesel notes that it is well established that a creditor need not first reduce its claim against its debtor to judgment before suing a guarantor. *See, CBS, Inc. v. Film Corp. of America*, 545 F.Supp. 1382, 1389 (E.D.Pa.1982); *Aquavella v. Harvey*, 69 Misc.2d 606, 330 N.Y.S.2d 560, 563, *aff'd*, 40 A.D.2d 940, 337 N.Y.S.2d 611 (4th Dept.1972). *See also*, 72 Principal and Surety, §§ 245, 249, pp. 699–700; 50 Am. Jur., Suretyship, § 172, p. 1017.

Morse/Diesel further notes that F & D impleaded a third party defendant, and participated, albeit in a minor way, in the ongoing discovery in this action for two years, without ever questioning the sufficiency or maturity of this claim. This activity is apparently argued to render the present challenge improper.

---

**2.** In actions where a Federal District Court acquires jurisdiction by virtue of diversity of the parties, the Court applies the substantive law of the state in which it sits. *Brand v. Brand*, 811 F.2d 74, 77 (2d Cir.1987). The parties, and therefore the Court, agree that New York law applies. *See Gelb v. Royal Globe Insurance Co.*, 798 F.2d 38, 44 n. 5 (2d Cir.1986), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987); *Sussex Leasing Corp. v. U S West Finan-*

*cial Services, Inc.*, 877 F.2d 200, 201 (2d Cir. 1989).

**3.** The Reimbursement Agreement is not attached to the proposed Amended Complaint, but it's terms are explicitly incorporated by reference, as part of that pleading. *See*, Amended Complaint ¶ 8.

Morse/Diesel's interpretation of the Indemnification Agreement is not entirely implausible. The Court is satisfied that Morse/Diesel's attempt to enforce the Indemnification Agreement against F & D presents a legally cognizable claim which is sufficiently ripe for review, notwithstanding the possibility that the amount or existence of that liability may ultimately be altered as a result of the claims and cross-claims in this litigation. *Cf. American Motorists Insurance Company v. United Furnace Co., Inc.*, 876 F.2d 293, 299–301 (2d Cir.1989). Morse/Diesel has an interest in resolving all of the claims arising out of the same factual circumstances in the same proceeding, and the Court will not needlessly bifurcate and complicate matters by forcing plaintiff to go after a guarantor in a separate lawsuit, after conclusion of the litigation against the subcontractor.

Again, for purposes of this motion to dismiss, the Court must draw reasonable inferences in favor of Morse/Diesel. Morse/Diesel may ultimately develop facts such that F & D will be liable for the amounts now claimed in Count I. Accordingly, the Court will not take the "drastic step" of dismissing Count I of the Amended Complaint, and defendant's motion to dismiss this count is denied. *See Meyer v. Oppenheimer Management Corp.*, 764 F.2d 76, 80 (2d Cir.1985).

*B. Count II*

■ As the basis of Count II of the Amended Complaint, Morse/Diesel alleges that prior to August 6, 1985, F & D was informed, both by its own consultant and by a consultant employed by Jackson, that the estimated cost of completing the work under the Subcontract substantially exceeded the balance of the Subcontract price. Amended Complaint ¶¶ 15–17. On August 6, 1985, there was a meeting (the "meeting") which was attended by representatives of Jackson, Morse/Diesel, Times Square Hotel Company and F & D. Morse/Diesel contends that at that meeting, F & D was aware that Jackson would effectively be in default of the Subcontract no later than the time when the balance of the Subcontract price was paid by Morse/Diesel. Amended Complaint ¶ 20. Further, it is alleged that F & D stated to Morse/Diesel that it would not complete the Subcontract if Morse/Diesel declared Jackson in default. Amended Complaint ¶ 22.

Morse/Diesel asserts that F & D knew or recklessly disregarded the fact that Jackson could not be replaced by another subcontractor, due to the time constraints faced by Morse/Diesel in connection with the Project's scheduled opening date. Amended Complaint ¶ 23. It is alleged that, by its statement, F & D "forced" Morse/Diesel to keep Jackson on the Project, and refrain from declaring Jackson in default. Morse/Diesel claims that it was therefore "compelled" to provide funding to Jackson for the labor and material costs required to complete work under the Subcontract, thereby depriving Morse/Diesel of its right to receive any benefits of the Bond. Amended Complaint ¶¶ 24–25.

Count II explicitly incorporates the terms and provisions of the Bond. Amended Complaint ¶ 14. The Bond states in pertinent part:

> Whenever [Jackson] shall be, and declared by [Morse/Diesel] to be, in default under the [sub]contract, ... [F & D] may [1] promptly remedy the default or ...
>
> > [2] complete the [sub]contract in accordance with its terms and conditions, or
> >
> > [3] obtain a bid or bids for completing the [sub]contract in accordance with its terms and conditions ..., arrange for a contract [to complete the subcontract] ... and make available as work progresses ... sufficient funds to pay the cost of completion less the balance of the [sub]contract price; but not exceeding [the penal limit of the bond].

Exhibit B, attached to F & D Memorandum Dated July 1, 1988.

Morse/Diesel has variously described Count II of its Amended Complaint. The claim was originally characterized as "essentially a 'bad faith' claim against F & D." Morse/Diesel Memorandum Dated May 25,

1988, p. 4. In its opposition, F & D argued, persuasively, that New York does not recognize any tortious cause of action for bad faith, citing, *inter alia, Durham Industries, Inc. v. North River Ins. Co.,* 673 F.2d 37, 41 (2d Cir.), *cert. denied,* 459 U.S. 827, 103 S.Ct. 61, 74 L.Ed.2d 64 (1982) (refusing to recognize independent cause of action under New York law "based on a 'tort of bad faith'"). *See,* F & D Memorandum Dated July 1, 1988, at pp. 27–28. Morse/Diesel then replied that Count II is actually based on the "implied covenant of good faith and fair dealing arising out of its contractual surety relationship with Morse/Diesel." Morse/Diesel Reply Memorandum Dated September 9, 1988, p. 10.

Beyond pointing out that New York does not recognize a tortious "bad faith" action, F & D argues that, under the terms of the Bond, F & D had three options if Jackson should default, namely, remedy the default, complete the contract, or obtain a bid for completing the contract. F & D's position is that, even if it stated that it was not going to pursue its option to remedy the default, it could still ultimately fulfill its obligations by exercising one of the remaining two options. F & D contends that simply because the option selected by F & D is not the one most beneficial to Morse/Diesel, no claim for bad faith is stated. *See* F & D Memorandum Dated July 1, 1988, p. 30.

If Count II states a legally cognizable claim, it must rest on the implied covenant of good faith and fair dealing that "exists in every contract." *Durham Industries, Inc. v. North River Insurance Co.,* 673 F.2d 37, 41 (2d Cir.), *cert. denied,* 459 U.S. 827, 103 S.Ct. 61, 74 L.Ed.2d 64 (1982). While it may be a limited and tenuous legal theory, numerous courts have found a cause of action for breach of contractual covenants of good faith and fair dealing under New York law. *See, e.g., PepsiCo, Inc. v. Continental Casualty Company,* 640 F.Supp. 656, 664 (S.D.N.Y.1986) (denying motion to dismiss, Court read claim alleging that insurer wrongfully cancelled policy "as alleging a violation ... of the implied covenant of good faith and fair dealing, which is implied in all contracts under New York law"); *Oppel v. Empire Mutual Insurance Company,* 517 F.Supp. 1305, 1306 (S.D.N.Y.1981) (recognizing bad faith action against insurance company for refusing to settle); *Gordon v. Nationwide Mutual Insurance Company,* 30 N.Y.2d 427, 437, 334 N.Y.S.2d 601, 608, 285 N.E.2d 849, 854 (1972), *cert. denied,* 410 U.S. 931, 93 S.Ct. 1374, 35 L.Ed.2d 593 (1973) (damage for breach of implied covenant of fair dealing "is a characteristic of the law of contracts generally, and is not a peculiarity alone of the contract of liability insurance").

Morse/Diesel is not required, as claimed by F & D, to have expressly pled a breach of the implied covenant of good faith and fair dealing in its Amended Complaint. It is not necessary for Morse/Diesel to set out the legal theory upon which its claim for a bad faith breach depends; it is enough that the *facts* alleged support the legal basis for relief. *See generally* 5 C. Wright & A. Miller, *Federal Practice and Procedure* §§ 1219–1220 (1969).

It appears unlikely that F & D breached an implied covenant of good faith and fair dealing, especially where no express breach of the underlying agreement occurred. Definitive resolution of that claim, however, will depend upon showings that go beyond the face of the Amended Complaint. Despite the serious doubts F & D raises about the ultimate viability of this claim, the Court must, for present purposes, give Morse/Diesel the benefit of every reasonable inference. While the Court recognizes that the Bond provides for other options in the case of a declared default, it is obligated, for purposes of this motion to dismiss, to accept Morse/Diesel's position that F & D, in violation of the implied covenant, may have effectively deprived Morse/Diesel of the benefits of *any* of F & D's options under that performance Bond.

With regard to the compensatory claim of Count II, F & D's motion to dismiss is denied. The punitive damages element of Count II is discussed below.

## C. Count III

Count III purports to be a claim for fraudulent misrepresentation, also based

upon an alleged statement made at the meeting in August, 1985. Morse/Diesel asserts that at that August meeting, F & D represented that it affirmatively agreed with Jackson's statement that its costs to complete the work remaining under the Subcontract were less than the total of unpaid sums owed to Jackson. This alleged representation is said to be false, in light of F & D's alleged knowledge, obtained through both its own consultant and a Jackson consultant, that the estimated cost for completing the work substantially exceeded the remaining Subcontract balance. Amended Complaint ¶¶ 15–17, 27–28.

Morse/Diesel further claims that F & D made the alleged misrepresentation, intending that Morse/Diesel would rely on that statement as a representation of F & D's informed belief. Amended Complaint ¶ 28. Finally, Morse/Diesel alleges that it relied on F & D's misrepresentation in agreeing to provide funding to Jackson, and that its reliance was reasonable because Morse/Diesel was aware that F & D was monitoring Jackson's performance of the Subcontract, as well as Jackson's costs to complete the work required under it, through periodic inspections and reports. Amended Complaint ¶¶ 30–31.

F & D argues that Count III should be dismissed because Morse/Diesel has failed to allege the requisite elements of a claim for fraud under New York law.[4] Under New York law, Morse/Diesel must allege, and ultimately prove: a false representation, scienter, materiality, expectation of reliance, justifiable reliance, and damage. See Bankers Trust Company v. J.V. Dowl-er & Co., Inc., 47 N.Y.2d 128, 138, 417 N.Y.S.2d 47, 53, 390 N.E.2d 766, 771 (1979); Murray v. Xerox Corp., 811 F.2d 118, 121 (2d Cir.1987). Examination of Count III of the Amended Complaint in light of these requisites indicates that plaintiff has not stated a sufficient claim for fraudulent misrepresentation.

Morse/Diesel, for example, alleges no facts which could support an inference of the necessary element of scienter, or an intent to deceive. See, Galvez v. Local 804 Welfare Trust Fund, 543 F.Supp. 316, 318 (E.D.N.Y.1982). Although Paragraph 28 of the Amended Complaint baldly states that F & D intended Morse/Diesel to rely on the alleged misrepresentation, absolutely no factual allegation at all is presented to support this statement. Considering that F & D would be responsible, under the Reimbursement Agreement, for any money paid above the Subcontract price, it is unclear why F & D would desire to deceive Morse/Diesel into providing the excess funding. Morse/Diesel must provide a clearer allegation of motive, or other basis for an inference of scienter, to state a sufficient claim.

Similarly, conflicting factual assertions in the Amended Complaint preclude a sufficient allegation of reliance, notwithstanding the incredulous assertion that the general contractor Morse/Diesel relied on the "informed belief" of a financial bonding company's assessment of construction costs, on a project with which Morse/Diesel was continuously and substantially involved. In the Reimbursement Agreement, which is incorporated into the Amended

---

4. Although F & D primarily bases its motion on Fed.R.Civ.P. 12(b)(6), it also argues, in a footnote, that Count III is insufficiently particular under Fed.R.Civ.P. 9(b). See F & D Memorandum Dated July 1, 1988, p. 34 n. 17. As indicated *supra*, the basic substantive elements of a New York misrepresentation claim are not sufficiently alleged, and Count III will accordingly be dismissed under Fed.R.Civ.P. 12(b)(6).

The Court notes that certain traditional requisites of Fed.R.Civ.P. 9(b), namely identification of the allegedly fraudulent statement, the time and place of the statement, and the content of the statement, are satisfied here. See generally, DiVittorio v. Equidyne Extractive Industries, Inc., 822 F.2d 1242, 1247 (2d Cir.1987); Conan Properties, Inc. v. Mattel, Inc., 619 F.Supp. 1167, 1172 (S.D.N.Y.1985). Other commonly required information, however, including the manner in which plaintiff was misled, what the defendant obtained as a consequence of the fraud, and some minimal factual basis for inferring scienter, is not apparent. See Connecticut National Bank v. Fluor Corp., 808 F.2d 957, 962 (2d Cir. 1987); Beck v. Manufacturers Hanover Trust Co., 820 F.2d 46, 50 (2d Cir.1987), cert. denied, — U.S. ——, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). These deficiencies contribute to the substantive insufficiency of the claim under New York law, and its consequent dismissal under Fed.R.Civ.P. 12(b)(6).

Complaint, Morse/Diesel explicitly represented that it disagreed with Jackson's position. It then claims that it relied on the statement that Jackson's position was correct, which would require that Morse/Diesel *believed the truth of the position with which it expressly took issue.* In other words, Morse/Diesel is saying that it simultaneously relied upon, and disbelieved, the alleged statement. These diametrically opposed and conflicting factual positions in the Amended Complaint cannot be reconciled, and do not merely present alternative theories, or inconsistent questions of fact which go to the merits. Morse/Diesel is attempting to plead that something is both a fact and not a fact; consequently, there is no sufficient allegation regarding the reliance element of a fraud claim in New York.

Morse/Diesel also does not adequately plead that it was damaged by the alleged misrepresentation. The Reimbursement Agreement provides that F & D would repay any amounts disbursed to Jackson, above the adjusted Subcontract price. Morse/Diesel has not indicated what F & D would obtain, as a consequence of the alleged fraud.

Since the Amended Complaint does not state the requisite elements of fraud under New York law, F & D's motion to dismiss Count III is granted.[5] Although it appears unlikely that a sufficient claim can be stated, given the nature of the factual allegations in the original and Amended Complaints and their incorporated documents, Morse/Diesel will be granted leave to replead Count III. Such a pleading should be served and filed within 60 days of the issuance of this opinion, or the claim will be deemed dismissed with prejudice.

### D. *Punitive Damages*

■ The punitive damage claim which remains is made in connection with the contractual Count II of the Amended Complaint. F & D moves separately to dismiss this portion of the count. It has long been axiomatic that "[u]nder the law of New York, ... punitive damages are not available for a simple breach of contract." *Smith v. Lightning Bolt Productions, Inc.,* 861 F.2d 363, 371 (2d Cir.1988). The question here is whether the wrong alleged in the Amended Complaint goes beyond a simple breach, and includes the additional elements required to state a cognizable claim for punitive damages.

F & D argues that punitive damages cannot be recovered in a breach of contract action, absent a specific allegation of fraud against the general public. *See Walker v. Sheldon,* 10 N.Y.2d 401, 404, 223 N.Y.S.2d 488, 490, 179 N.E.2d 497, 498 (1961); *Halpin v. Prudential Ins. Co. of America,* 48 N.Y.2d 906, 908, 425 N.Y.S.2d 48, 49, 401 N.E.2d 171, 172 (1979). The standard for determining the availability of punitive damages has been described in *Samovar of Russia Jewelry Antique Corp. v. Generali,* 102 A.D.2d 279, 476 N.Y.S.2d 869 (1st Dept.1984). That court stated:

> We have consistently adhered to the standard of *Walker v. Sheldon, supra,* in rejecting claims for punitive damages unless there is a showing of wanton dishonesty as to imply a criminal indifference to civil obligations—morally culpable conduct *directed at the general public,* a public as opposed to a mere private wrong.

*Id.,* 476 N.Y.S.2d at 872 (*citing Halpin, supra*) (emphasis added).

This required element[6] has been recognized by federal courts. In *Durham In-*

---

**5.** *Ecker v. Wright,* 69 A.D.2d 1012, 416 N.Y.S.2d 150, 150–51 (4th Dept.1979) does not indicate a contrary result, and Morse/Diesel's reliance on that case is misplaced. The court in *Ecker* was essentially concerned with whether the elements of the fraud were pleaded with sufficient detail to inform the defendant of the substance of the claim, under New York procedural law. As indicated above, the dismissal here is based on a failure to allege the required substantive

elements of the fraud, not on an insufficiently particular pleading. *See infra,* footnote 4.

**6.** Although the Court here is focusing on the failure to allege a wrong against the general public, the allegations in the Amended Complaint similarly do not support the moral turpitude or "criminal indifference to civil obligations" required for an award of punitive damages under New York law. Even construing all of the possible facts and inferences in the light

*dustries, Inc. v. North River Ins. Co.*, 673 F.2d 37, 41 (2d Cir.1982), *cert. denied,* 459 U.S. 827, 103 S.Ct. 61, 74 L.Ed.2d 64 (1982), the Second Circuit held that "under New York law, punitive damages may not be awarded in breach of contract cases, which involve a private wrong and where no public rights are involved." Similarly, in *Eccobay Sportswear, Inc. v. Providence Washington Ins. Co.*, 585 F.Supp. 1343 (S.D.N.Y. 1984), the Court held that punitive damages were not recoverable from an insurer for its bad faith delay in payment of a claim. The Court stated that punitive damages are

> justified only upon an extraordinary showing of disingenuous or dishonest failure to carry out a contract. The New York courts routinely dismiss claims for punitive damages against insurance carriers when there has been no allegation or showing that the carrier in its dealings with the general public, had engaged in a fraudulent scheme evincing such a high degree of moral turpitude and ... such wanton dishonesty as to imply a criminal indifference to civil obligations. Thus, what must be asserted and proved to sustain a prayer for punitive damages is not an isolated transaction incident to an otherwise legitimate business, but a gross and wanton fraud upon the public.

*Id.* at 1344 (internal quotes and citations omitted).

Morse/Diesel argues that punitive damages are available to it under New York law, even without an allegation of public harm or deprivation of a public right. Plaintiff relies heavily upon *Borkowski v. Borkowski*, 39 N.Y.2d 982, 387 N.Y.S.2d 233, 355 N.E.2d 287 (1976), a memorandum decision, where the court noted in *dicta* that punitive damages could be recovered, *in a fraud case,* without showing public harm, if the proof establishes "gross, wanton, or willful fraud or other morally culpable conduct." *Id.* F & D notes, however, that *Borkowski* itself expressly reaffirmed *Walker.* Moreover, on the same day that the New York Court of Appeals decided *Borkowski,* it also decided *Garrity v. Lyle Stuart, Inc.,* 40 N.Y.2d 354, 358, 386 N.Y. S.2d 831, 833, 353 N.E.2d 793, 795 (1976), where the Court of Appeals again reaffirmed *Walker,* and stated "it has always been held that punitive damages are not available for mere breach of contract, for in such a case only a private wrong, and not a public right, is involved."[7]

There is, however, some discrepancy in the case law. The Court in *Banco Nacional de Costa Rica v. Bremar Holdings Corp.,* 492 F.Supp. 364 (S.D.N.Y.1980), denied a motion to dismiss a claim for punitive damages in connection with a state law claim for fraud and breach of contract, even though the fraud involved was not "aimed at the public generally". *Id.,* 492 F.Supp. at 374. In reaching its decision, the *Banco Nacional de Costa Rica* Court cited *Borkowski* and two intermediate New York appellate court cases: *Chase Manhattan Bank, supra,* 411 N.Y.S.2d 66, which was a straight fraud case that relied upon both *Borkowski* and *Walker;* and *Greenspan v. Commercial Ins. Co.,* 57 A.D.2d 387, 395 N.Y.S.2d 519 (1977), in which the court held that *Walker* is no longer valid in New York.

This Court respectfully declines to follow the reasoning of the *Banco Nacional de Costa Rica* Court. As the Court of Appeals for the Second Circuit has subsequently stated, *"Greenspan ... does not represent the prevailing New York view"* on the availability of punitive damages,

---

most favorable to plaintiff, no punitive damages could be awarded on the Amended Complaint.

**7.** Morse/Diesel cites several cases where the wrongs were not directed against the public generally, but where punitive damages were nevertheless allowed. None of these cases, however, involved an alleged breach of contract. *See, e.g., Roy Export Company Establishment of Vaduz v. Columbia Broadcasting System, Inc,* 672 F.2d 1095, 1106 (2d Cir.), *cert.*

*denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982) (permitting award of punitive damages for claims of unfair competition and copyright infringement); *Chase Manhattan Bank, N.A. v. Perla,* 65 A.D.2d 207, 411 N.Y.S.2d 66 (4th Dept. 1978) (straight fraud claim); *Rush v. Oppenheimer & Co., Inc.,* 596 F.Supp. 1529 (S.D.N.Y. 1984) (same); *Whitbread (U.S.) Holdings, Inc. v. Baron Philippe de Rothschild, S.A.,* 630 F.Supp. 972 (S.D.N.Y.1986) (same).

where no public right is implicated. *Durham Industries, Inc., supra,* 673 F.2d at 41 n. 2. Moreover, other New York appellate courts have recognized that *Greenspan* "is contrary to the overwhelming authority in the State." *See, Samovar, supra,* 476 N.Y.S.2d at 872. Finally, the Third Department has subsequently limited *Greenspan* to straight fraud cases. *See Salka v. Lumbermens Mut. Cas. Co.,* 127 A.D.2d 333, 515 N.Y.S.2d 344, 346 (3d Dept. 1987); *Home Ins. Co. of Indiana v. Karantonis,* 124 A.D.2d 368, 507 N.Y.S.2d 489, 490 (3d Dept.1986).[8]

This Court is convinced that, under New York law, punitive damages based on a contractual action cannot be sought, as a matter of law, absent some allegation of wrong against the public generally. The Amended Complaint does not, nor on the apparent facts could it, allege such a general public wrong. Accordingly, the punitive damage element of the Count II is dismissed.

Finally, F & D not only opposed amendment of the complaint and cross-moved to dismiss, but also moved for sanctions under Fed.R.Civ.P. 11. Rule 11 is violated "only when it is patently clear that a claim has absolutely no chance of success." *Oliveri v. Thompson,* 803 F.2d 1265, 1275 (2d Cir. 1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987) (quoting *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985)). As indicated above, Morse/Diesel's Amended Complaint presented objectively valid matters, requiring extensive consideration by the Court.

This Court has previously noted that applications under Rule 11 can themselves be baseless and frivolous. *Pompano–Windy City Partners, Ltd. v. Bear, Stearns & Co., Inc.,* 698 F.Supp. 504, 508 (S.D.N.Y.

1988) F & D's motion for sanctions is denied in its entirety.

## CONCLUSION

For the reasons stated above, the Court allows the supplementation of Count I, and the amendment of the original complaint with the addition of Counts II and III. Defendant F & D's motion to dismiss the compensatory claim of Count II is denied.

Defendant F & D's motions to dismiss Count III of the Amended Complaint, and the punitive damage claim of Count II, are granted. Plaintiff is given 60 days to replead Count III, or that Count will be deemed dismissed with prejudice.

Defendant's motion for sanctions is denied in its entirety.

SO ORDERED.

---

8. Morse/Diesel also cites cases imposing punitive damages on insurers for their unreasonable failure to settle third-party liability claims, which thereby exposes an insured to liability in excess of policy limits. *See, e.g., Gordon v. Nationwide Mut. Ins. Co.,* 30 N.Y.2d 427, 334 N.Y.S.2d 601, 285 N.E.2d 849 (1972), *cert. denied,* 410 U.S. 931, 93 S.Ct. 1374, 35 L.Ed.2d 593 (1973) and *Oppel v. Empire Mut. Ins. Co.,* 517 F.Supp. 1305 (S.D.N.Y.1981). These cases deal with a discrete area of New York insurance jurisprudence, which is applicable only to the particular circumstances present in the context of those third-party claims. Thus, the New York Court of Appeals in *Halpin, supra,* 48 N.Y.2d at 907, 425 N.Y.S.2d at 49, 401 N.E.2d at 172, distinguished *Gordon* and similar third-party cases from cases involving first-party claims. *See also Samovar of Russia, supra,* 476 N.Y.S.2d at 871.